Jennie B. ANDERSON,
Plaintiff-Appellee,

v.

CHATTANOOGA GENERAL SERVICES
COMPANY and Liberty Mutual Insurance Company, Defendants-Appellants.

Supreme Court of Tennessee.

Dec. 31, 1981.

Phillip A. Fleissner, Fleissner & Ledford, Chattanooga, for defendants-appellants.

Michael S. Prichard, Prichard & Quinton, Chattanooga, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

This is a worker's compensation case wherein the defendants, the employer and

insurance carrier, assert that the Chancellor erred in three respects, two of which will be treated herein.

Plaintiff, her daughter Lynn, and Lynn's friend, Susan Owens, went together to several businesses to apply for jobs. One of these was defendant, Chattanooga General Services, and another was Salem Carpet Mills. Plaintiff, who had forgotten her glasses, asked Lynn to fill out the application forms for her, and told her what to write in. Defendant was not hiring, so plaintiff accepted a job at Salem. (Her job duties there are not in the record.) A week or so later, plaintiff heard through Susan Owens of an opening at defendant and called the party in charge of hiring, one Catherine Boyd. They had a lengthy conversation about that job, at the conclusion of which Ms. Boyd hired plaintiff. The next day, March 16, 1979, plaintiff went to work for defendant at a job involving cleaning bobbins, with some bending, lifting, etc. Her original application form had been lost, so she filled out another, which she testified was the same as the first.

On May 30, 1979, plaintiff sustained an injury to her lower back while bending and lifting. She worked until July 12, although during that time she took time off for bed rest, prescribed by the company doctor; and she was assigned to light duties. The company doctor referred her to a Dr. Seiters, who ultimately hospitalized her from July 26 through August 17. A myelogram was followed by surgery on her left lumbar spine for a ruptured disc and pinched nerve. At the time of Dr. Seiters' deposition, in February, 1980, he was still seeing plaintiff for continuing pain and difficulties, and for new problems arising on the right, unoperated, side.

Dr. Seiters testified that plaintiff had accelerated degenerative disc syndrome which had predisposed her to the injury in question. His opinion was that she had a 30% permanent disability "relating to her ongoing back problem" and that in the future she should not perform work involving regular heavy lifting (i.e., of weights in the neighborhood of twenty-five to thirty-five pounds or more). The Chancellor awarded plaintiff a 60% disability, and defendants appeal.

Defendants strenuously assert that plaintiff was barred from recovery because she fraudulently concealed a twenty-year history of back injuries and troubles when she applied for her job with defendant. This issue will be more fully discussed below. When plaintiff failed to reveal these problems and her knowledge thereof at her deposition, and was questioned about such failure on cross-examination at the hearing, she attempted to explain that she had forgotten all of these events at the deposition due to overdoses of various medications which she had been taking. She admitted that she had taken numerous medications at various times, which fell into the categories of painkillers for her back and for sinus and tension headaches; amphetamines to reduce her appetite; and tranquilizers and sleeping pills.

In order to support her argument that her mind and memory had been affected by overmedication at the time of her deposition, thus excusing her untrue answers therein, she called as a witness a pharmacist, Mr. Tucker. Defendant asserts that his testimony was inadmissible. We agree, primarily because his testimony was not based upon a proper predicate.

The hypothetical which was posed to Mr. Tucker was as follows:

... If we take a 51-year old woman, she is taking Triavil ... Fiorinal, and Valium, and Biphetamine for a period of time, and that in May of 1979, she suffers a back injury. She then adds to these medications she was taking before that, Soma Compound with Codeine and Etrafon. Due to her condition, she abuses, takes too many of these pills, more than what was prescribed for her. Let's further assume that ... on [January 22, 1980] she was taking these medications, and also in an abused condition. Can you tell me, of your knowledge, what these medications would do, how they would react on a person's body?

This predicate was improper because there was no reference to plaintiff's weight, susceptibility to drugs, how long it had been since she had taken the drugs, and similar factors. Most importantly, according to plaintiff's own prior testimony, she herself did not know how much she had taken and did not even know which ones she had taken. Even so, it was clear that she had not taken, at the time of her deposition, all of the drugs enumerated in the hypothetical. She testified merely that she knew she had taken too much medicine before her deposition, and named only Soma Compound, Valium and possibly Fiorinal.

Mr. Tucker testified that anyone who had taken all of the drugs listed would be "sleeping most of the time," "apparently very drunk," "confused," "rambling on and on," etc. Defendants' counsel then asked whether Mr. Tucker would still say that a person was affected by drugs if she could give a 76-page, two-hour deposition in which all answers were coherent, with clear speech, good grammar, responsive answers, answers which were consistent when questions were repeated in different ways, and which did not ramble. Mr. Tucker answered this question inconsistently with what he had previously said. Defendants' counsel asked, "The fact of the matter is, you don't know what condition she was in when she gave her deposition, do you?" Answer by Mr. Tucker: "No, sir, I don't even know who the defendant [sic] is, or whoever she is."

We conclude that Mr. Tucker's testimony was incompetent to support plaintiff's assertion that she was overmedicated when she gave her deposition, thus excusing her alleged loss of memory. Further, we do not see that *anyone*, even a doctor, could have provided testimony any more competent than that of the pharmacist, since plaintiff was unable to supply the information which would have been necessary to an expert, as outlined above. Admission of this testimony was reversible error.

■ We need not cite authority in stating that one has a duty not to appear at his deposition in an incompetent mental condi-

tion; and a duty to make full disclosure of any reason why his testimony would be as unreliable as the plaintiff now argues hers was. To take an oath and give testimony sworn to be true, and then to attempt to excuse untruths on the basis of undisclosed incompetency insults the dignity of the Court.

The second issue to be discussed is defendants' argument that plaintiff was, as a matter of law, barred from recovering because she fraudulently concealed a twenty-year history of back trouble when she applied for her job.

As stated above, plaintiff, her daughter Lynn, and Susan Owens filled out job applications with defendant. Lynn filled out plaintiff's at her direction. The application contained the following questions, among many others: "Do you have any physical handicaps which would prevent you from performing specific kinds of work?—If yes, describe . . . ." Plaintiff did not answer this question. "Have you had a serious illness in the past 5 years?" "Have you ever received compensation for injuries?" She answered both of these "No."

The application ended with the following certification to be signed by the applicant:

## PLEASE READ CAREFULLY APPLICANT'S CERTIFICATION AND AGREEMENT

I hereby certify that the facts set forth in the above employment application are true *and complete* to the best of my knowledge. I understand that if employed, falsified statements on this application shall be considered sufficient cause for dismissal . . . .

(Emphasis added.)

Catherine Boyd, defendant's employee in charge of hiring, testified that she became interested in plaintiff on the basis of this application. Plaintiff called Ms. Boyd upon hearing that defendant might be hiring, and the two had a lengthy telephone conversation. Ms. Boyd stated that she fully described to plaintiff what the job would entail: cleaning bobbins weighing approxi-

mately a pound each; and lifting boxes of such bobbins once or twice a day, which boxes would weigh about fifty pounds. She asked plaintiff if she had any problem with lifting, to which plaintiff replied that she did not. She then volunteered that she had previously worked at a food store where she had lifted weights of fifty pounds. Plaintiff did not disclose anything about her medical history. On the basis of this conversation, her questions and plaintiff's assurances, Ms. Boyd told plaintiff to come to work the next day.

When she arrived for work, she and Susan Owens spoke again with Ms. Boyd, in each other's presence. Ms. Boyd asked both if they could lift, and if there would be any problems with lifting. Both said, "No." At this time, Ms. Boyd gave plaintiff another application form to complete, to replace her original one, which had at some point been lost.

After she had been working for some time, plaintiff was given a different job, that of general cleaning of offices, restrooms, and the break area. One of her duties was filling the soft drink machine, which involved the moving and lifting of stacks of soft drink cases. Obviously this job was more strenuous than the job for which she had been hired, and defendant was of course unaware of any reason why plaintiff should not be transferred. The reason for the transfer was to make it less likely that plaintiff would be laid off. It was in the process of moving these cases that plaintiff was injured.

Plaintiff testified at the trial, and had also stated at her deposition, that she had never had back trouble of any kind. When extensively cross-examined, she stated that she had forgotten the injuries and incidents of which she was reminded. Interestingly, between the deposition and the hearing, she remembered a few of these, but had forgotten them again by the time of the trial. Even more interestingly, she remembered her *complete* medical history at the time she was seen and hospitalized by Dr. Seiters. His file contained everything that plaintiff said she had forgotten—or had

never known—at the hearing, the deposition, and at the time she had applied to defendant.

In 1958, she had been treated by a Dr. Adams for low back strain, and had even been given a brace similar to one prescribed by Dr. Seiters. Consistently with this, she told Dr. Seiters that she had had back trouble for twenty years. However, at trial, she said that she had forgotten this treatment until she found the brace in a drawer *after the deposition.*

Second, several years later, she had hurt her back while moving something heavy, "while I was going to Dr. Swift." She was given "a heat treatment." Defendants' counsel asked her, "You went to see Dr. Swift several times for that, didn't you?" She answered, "I don't know how many times, sir." She did not disclose that in her deposition, but did tell Dr. Seiters about it.

In 1971, she had been in an automobile accident, and had been treated by a Dr. Ellis. On the stand, she still professed not to recall how she had been injured.

In 1966, she had been quite seriously hurt in a different automobile accident, wherein the brakes of her car had locked. She brought an action in federal court against the automobile dealer and manufacturer. She had given her deposition in that case, had been present during the entire trial, and had heard the testimony of her doctor, again Dr. Ellis. In the present case, she did recall the accident, but testified that she had only hurt her tailbone, not her lumbar spine; and that this was what Dr. Ellis had told her. In fact, she had injured her lumbar spine, and Dr. Ellis had testified that the lumbar injury was one of her *primary complaints.* She had also so stated in her deposition given in the prior lawsuit. She had further testified in the prior case that she could not lift as she would like to anymore and, for example, could not move her furniture around.

In the deposition in this case she denied ever having been advised by any doctor that she had a back problem or any abnormal low-back X-ray. Yet she had heard Dr. Ellis testify in the federal case that she had

a markedly abnormal disc in her back. He testified that such a condition often led to backache.

She testified herein that she had never had backache except for normal fatigue resulting from her strenuous work at the food store where she had told Ms. Boyd that she had regularly lifted fifty-pound weights. But Dr. Ellis had testified in federal court that even then, 1968, plaintiff had a job involving standing on her feet a great deal, and that she complained a good bit with legaches and backache on both sides of the lumbar back. At the hearing here, plaintiff said that she did not know what this job was. The medical history which she gave to Dr. Seiters showed that she "got pain off and on in the lower back," had had episodic back pain for over twenty years, and knew that she had previously had abnormal X-rays showing back problems.

There is unrefuted testimony that plaintiff *did* have her back troubles in mind when she first applied for a job with defendant. Susan Owens stated that when she, plaintiff, and Lynn Anderson were on their way there to apply, plaintiff had said that there would be lifting, and that it would probably be easier on her back to work at Salem Carpet Mills, where they were also applying. At the defendant's office, while the three were filling out their applications, Miss Owens said that they had discussed the portion which asked about prior problems, and plaintiff had said something about her back. "She said if she put down that she had back problems, that they might not hire her, since we'd be lifting."

■ Our prior cases on the subject of fraud and misrepresentation hold that the employer must satisfy a three-pronged test in asserting this defense: (1) the employee must have knowingly and willfully made a false representation as to his physical condition; (2) the employer must have relied thereon and such reliance must have been a substantial factor in the hiring; and (3) there must have been a causal connection between the false representation and the injury. *Federal Copper & Aluminum Co. v. Dickey*, 493 S.W.2d 463 (Tenn.1973). Based

upon the evidence, we hold that the second and third prongs of the test were clearly satisfied. It is the first element upon which we must focus, because if there was material evidence in support of the Chancellor's findings of fact, we must affirm them.

■ What the Chancellor found was that plaintiff had made no misrepresentation. He reviewed three earlier holdings of this Court, two of them unpublished, and apparently emphasized language therein to the effect that the employees had not been asked questions on their application forms which were sufficiently specific to elicit answers regarding the employees' particular states of health. In one of these cases, the employee was asked, "Do you have [*not* have you had] back injury [*not* back trouble, disease, sprain, etc.]?" Thus the employee did not make a false statement when he answered, "No," since he had had a prior episode of back *pain*, and the evidence was that it was caused by ordinary arthritic changes, not an "injury." In both of the unreported cases relied upon by the Chancellor, there was evidence of only one prior episode of back trouble.

The Chancellor acknowledged in his opinion that, in addition to the questions on defendant's application form, Ms. Boyd had talked to plaintiff for some time on the day before she came to work, and that Ms. Boyd had described the job and asked if there were any problems, any reason why lifting would be a problem. Plaintiff volunteered that she had previously had a job where she had lifted fifty-pound weights. However, the Chancellor held that the key question asked of plaintiff was whether she had any "physical handicap" which would prevent her from lifting. He held that, based on his own personal knowledge, a job such as that which plaintiff had previously held would cause anyone's back to hurt. Therefore, plaintiff had made no misrepresentation.

It may be true that the questions printed on defendant's application forms were not specifically applicable to plaintiff (although "handicap" would probably be a good way to describe plaintiff's condition, since Dr. Seiters testified that if he had examined

her *prior* to her going to work for defendant, he would not have approved her for that job based upon her accelerated degenerative disc syndrome). More important are the discussions between Ms. Boyd and plaintiff both on the telephone and at the plant the day plaintiff arrived for work. At both times, Ms. Boyd asked her if there were *any* reason why lifting would be a problem. This was all that an employer could do to elicit the desired information, since the nature of any problem would be strictly within the employee's knowledge. The employer could hardly have phrased the question more broadly or inclusively.

It does not matter that this question was asked orally rather than in the application form itself. In *Haddix v. Day & Night Manufacturing Co.*, 540 S.W.2d 639 (Tenn. 1975), we held it unnecessary to rule on the falsity of an answer in the application when answers to a subsequent medical history questionnaire failed to reveal prior back episodes. The plaintiff therein was very similar to plaintiff here in that he had had problems for which he had seen doctors in 1958, 1967 and 1968. The employment in question had begun in 1971, so several years had passed since the last incident requiring medical treatment. "Considering appellant's past history of back trouble, we feel that appellant knowingly and willfully falsified the answers to these questions." *Id.* at 641.

The *Haddix* case and others show that fraud and misrepresentation have been found when histories similar to plaintiff's have not been disclosed. Another example is *Phillips v. Fleetguard Division of Cummins Engine Co.*, 480 S.W.2d 528 (Tenn. 1972). There, plaintiff's troubles had begun fifteen years before the injury in question in 1970. He had had one injury, another about a year later, another in 1966, and another in 1967. These injuries were not revealed until the trial, so defendant was not able to plead the defense of fraud; and no motion was made to conform the pleadings to the evidence. Since the case was remanded for new trial on other grounds, we granted leave to amend to show fraud and misrepresentation. "[H]ad the Chan-

cellor been permitted by the state of the pleadings to weigh and consider the issue of misrepresentation, deceit and fraud, a different conclusion would be *inescapable.*" *Id.* at 531 (emphasis added).

■ Evidence that plaintiff may have been able to perform a job involving lifting in spite of having a twenty-year history of injuries, episodic pain, and the presence of accelerated degenerative disc syndrome, is *not* material evidence that there was no misrepresentation. We hold that the Chancellor should have considered what plaintiff did *not* reveal to Ms. Boyd, rather than what she did reveal, in determining the presence of a fraudulent misrepresentation. The issue of plaintiff's credibility in asserting that she forgot having had any back trouble when she applied, remembered all of it again when she gave Dr. Seiters her history, forgot it again when she gave her deposition, remembered some of it after her deposition, then forgot it again at the hearing, is moot. We have Dr. Seiters' unrefuted statements that she had had episodic back pain for twenty years. Further, we have unrefuted evidence that her back condition was in her mind at the time she applied. On the way to apply she stated, "It would probably be easier on my back to work at Salem Carpet Mills." When she was filling out her original application, she said, "If I put down that I have back problems, they might not hire me, since we'd be lifting."

Whatever the plaintiff's subjective intent was, the proof in this case shows an awareness of her back condition at the time she applied for her job, coupled with answers to direct questions, which answers were obviously only partially true and withheld much more than they revealed. It goes without saying that half-truths can be just as misleading and deceitful as outright lies. It will be remembered that the application signed by plaintiff contained an oath that her answers were "complete" as well as "true."

We cannot accept the argument that a person with a serious back condition should

be able to apply for a job, claim that she forgot about such condition because she says her mind was affected by taking too much medicine for that very condition (among others), and then collect compensation when she in fact suffers an injury to which such condition predisposed her.

We therefore reverse the decision of the Chancellor in failing to sustain the defense of fraudulent misrepresentation. This cause is accordingly dismissed and remanded to the Chancery Court of Hamilton County for entry of an order consistent with this opinion. The costs of this appeal shall be taxed to appellee.

HARBISON, C. J., and FONES and COOPER, JJ., concur.

BROCK, J., concurs in result only.