508

John W. SHELTON, Appellant,

v.

CLEVEPAK CONTAINER CORPORA-
TION and National Union Fire Insur-
ance Co.; Coca Cola Bottling Co. of
Memphis, and Liberty Mutual Insur-
ance Company, Appellees.

Supreme Court of Tennessee,
at Jackson.

June 6, 1988.

Wilburt J. Chiapella, Memphis, for appellant.

Carroll C. Johnson, III, Johnson and Bateman, Memphis, for Coca Cola Bottling Co. of Memphis and Liberty Mut. Ins. Co.

## OPINION

COOPER, Justice.

In this worker's compensation action, the employee appeals from the dismissal of his claim against the Coca Cola Bottling Company of Memphis, and its insurer, seeking benefits as the result of a disability from a bilateral carpal tunnel syndrome. The trial judge found that the plaintiff had aggravated a preexisting condition while working for Coca Cola and, as a result, had a permanent partial disability of the upper extremities. However, on finding that plaintiff had failed to disclose his true physical condition in making application with Coca Cola, the trial judge dismissed plaintiff's action.[1] In our opinion the evidence does not preponderate against the decision of the trial judge, and it is affirmed.

The record shows that on September 20, 1985, plaintiff was working as a forklift operator for Clevepak Container Corporation. While attempting to replace an empty propane cylinder on the forklift with a full one, plaintiff experienced a popping sensation in his neck and had pain in the

---

1. In an action against Clevepak Container Corporation, and its insurer, the trial judge found that plaintiff had no permanent partial disability from the injury sustained while plaintiff was working for Clevepak, and that all temporary total disability benefits had been paid plaintiff. Clevepak and its insurer were ordered to pay listed medical expenses incurred by plaintiff prior to February 26, 1985. On appeal, no issue is made of these findings or of the judgment of the trial court.

upper back, neck, and arms. The injury was reported and plaintiff was referred for medical treatment.

Plaintiff was treated by several physicians before being referred to Dr. David Donahue, a neurologist. Dr. Donahue first saw plaintiff on November 6, 1985, at which time plaintiff complained of neck pain and numbness in his right hand. The initial working diagnosis was neck strain and possible carpal tunnel syndrome on the right side. At Dr. Donahue's direction, plaintiff underwent several tests, including a nerve conduction test (EMG) and a myelogram. On finding no objective signs of nerve involvement or cause of plaintiff's continued complaints of pain, Dr. Donahue referred plaintiff to Dr. Gokturk, and later to Dr. Michael Lynch, for a series of cervical facet blocks in an effort to relieve plaintiff's pain. After giving the blocks, Dr. Lynch released plaintiff to return to work without restriction on February 12, 1986. According to plaintiff, he was surprised by Dr. Lynch's action and told Dr. Lynch he was continuing to have problems with his neck, hands, and arms. Dr. Lynch's response was that plaintiff would get better with time.

Due to a seasonal layoff at Clevepak, plaintiff made application for employment with Coca–Cola Bottling Company of Memphis, went through a series of interviews, a pre-employment physical and a lie detector test required by the employer's bonding company. On February 26, 1986, plaintiff went to work for Coca Cola as a delivery route salesman.

Shortly after he began work, plaintiff noticed an increase of pain and numbness in both hands. In April of 1986, plaintiff was diagnosed as suffering from bilateral Carpal tunnel syndrome and underwent surgery. According to Dr. Donahue, who performed the surgery, the condition is the result of long-term repeated trauma and predated plaintiff's employment by Coca Cola. He also testified the condition was aggravated by the work plaintiff did for Coca Cola.

The application for employment completed for Coca Cola by plaintiff included a section headed PHYSICAL DATA. In completing this section, plaintiff answered that he had no defect in sight, hearing, body or limb or back, and no diseases. He also stated that he had no "physical limitations of any kind." In response to the question, "Have you ever been injured on the job?", plaintiff explained that he had "injured his neck while lifting propane tank. Release with no restrictions." No mention was made on the application of any continuing neck, arm, and hand problems.

During the interviews conducted by employees of Coca Cola, the nature of the work expected of plaintiff was explained and he again was asked if there was any reason why he could not do the work. Plaintiff indicated that there was not, and made no mention of his on-going neck, arm, or hand problems.

Plaintiff was then given a routine preemployment physical by a doctor chosen by Coca Cola. Plaintiff did not tell the examining physician of his neck, arm, and hand problems. These conditions, whatever the cause, would not be revealed by a physical, absent the voicing of symptoms by the plaintiff.

■ An employer takes a worker as he finds him. Consequently, in making application for employment, the worker is required to give full and truthful information regarding his physical health on inquiry by a prospective employer. *See Anderson v. Chattanooga General Services Co.,* 631 S.W.2d 380 (Tenn.1981). And, if the worker knowingly and wilfully misrepresents his physical condition and the employer relies on the misrepresentation in employing the worker, the worker will be denied compensation benefits on a showing of a causal connection between the false representation and the injury suffered by the worker. *Beasley v. United States Fidelity and Guaranty Co.,* 699 S.W.2d 143, 144 (Tenn. 1985); *Quaker Oats Co. v. Smith,* 574 S.W. 2d 45 (Tenn.1978); *Federal Copper & Aluminum Company v. Dickey,* 493 S.W.2d 463 (Tenn.1973).

**510**

Plaintiff insists that in making application for employment, he told the truth about his physical condition as he knew it and in reliance on the release given him by Dr. Lynch. This is not borne out by plaintiff's testimony, both in a pretrial deposition and at trial, that he did not believe he had recovered when Dr. Lynch released him to return to work and that he was still having problems with his neck and numbness in both hands. In giving his pretrial deposition, which undoubtedly was the basis of the amendment by Coca Cola to its Answer so as to set out the defense of intentional misrepresentation, plaintiff testified as follows:

Q. Did you put on the application that the doctor told you no restrictions?

A. Yes, I showed them a receipt—I mean, the doctor's excuse—I mean, slip. I had it with me?

Q. Did you tell them that you disagreed with the doctor, that you felt you were still having problems?

A. No, I did not.

Q. But you did feel like you were still having problems?

A. Yes.

Q. What kind of problems were you having?

A. Just my neck was still hurting. As far as knowing what aggravated it, I couldn't tell. My neck was still bothering me, my hands were still bothering me, but he released me with no restrictions, and from day one, from that day on, I had no benefits. My disability stopped.

Q. All right. But were both hands bothering you when you went to work for Coca Cola prior to the time that you went to work.

A. I had trouble out of my left hand but mainly out of my right. I was having trouble, but it wasn't as serious as my right hand was.

Q. And as I understand it, you didn't—numbness from your arms going into your shoulder, were you having that problem?

A. Mainly my hand. I had the numbness but mainly my hand.

The personnel manager for Coca Cola testified that had plaintiff mentioned these physical problems in making application for employment, he would not have been employed to perform the strenuous work required of a delivery route salesman.

In dismissing plaintiff's action against Coca Cola, the trial judge pointed out that:

Plaintiff's own testimony, both in Court and by previous deposition, supported by medical proof, confirms that he was, at the time he applied at Coca Cola, having trouble with his neck, arms, and hands sufficient to cause him concern and surprise at being released for work by one of his treating physicians. He was asked by Coca Cola if he had any diseases or defects of body or limb or 'ANY' physical limitations 'of any kind.' To all of these, he answered in the negative and admits that he did not tell Coca Cola of the problems. These problems, (or an aggravation thereof) are the very ones for which he now seeks compensation.

The evidence in our opinion does not preponderate against the trial judge's findings that plaintiff withheld from Coca Cola material information concerning his physical condition, and that the physical problems he had at the time he completed his application are the very ones for which he seeks compensation. Further, we are of the opinion that the evidence supports the finding by the trial judge that Coca Cola relied on the information given by plaintiff on the application and in the interviews in making its decision to employ plaintiff. While it is true Coca Cola required plaintiff to undergo a preemployment physical, the physical problems of plaintiff were not such as to be found in a routine examination, but would require a recitation by plaintiff of his complaints and symptoms. The physician who performed the examination testified that had he been told of plaintiff's physical problems, he would have passed the information on to Coca Cola and it undoubtedly would have been a factor in Coca Cola's decision on employment. The lie detector test required of plaintiff was not to check the veracity of his answers to questions on the employment application, but was to sat-

isfy the requirements of the company that bonds employees of Coca Cola and dealt with areas having to do with honesty.

The judgment of the trial court is affirmed. Costs of the appeal will be paid by appellant and his surety.

HARBISON, C.J., DROWOTA and O'BRIEN, JJ., and McLEMORE, Special Justice.