

**FILED**
**Jun 29, 2026**
**01:12 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Christian Torres Antunez | Docket No. 2025-80-2021 |
| v. | State File No. 860087-2025 |
| MG Dyess, Inc., et al. | |
| Appeal from the Court of Workers' Compensation Claims Lisa A. Lowe, Judge | Heard June 9, 2026 in Nashville |

---

### Affirmed as Modified and Remanded

---

In this interlocutory appeal, the employer asserts the trial court erred in concluding the employee is likely to prevail at trial in establishing entitlement to workers' compensation benefits despite having obtained employment using a false identity. The employer argued it would not have hired the employee had it known he was not authorized to work in the United States and, therefore, there was no valid contract of hire. The employee responded that the plain language of the statute entitled him to benefits despite his use of a false identity. In ordering benefits, the trial court declined to expand the misrepresentation defense to include identity fraud, and the employer has appealed. Having carefully reviewed the record, we affirm the trial court's order and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Sarah H. Best, Knoxville, Tennessee, for the employer-appellant, MG Dyess, Inc.

Michael C. Beehan, Clinton, Tennessee, for the employee-appellee, Christian Torres Antunez

### Factual and Procedural Background

Christian Torres Antunez ("Employee") applied for work as a laborer with MG Dyess, Inc. ("Employer") using an identity that was not his. Specifically, Employee completed a written application for employment listing another person's name, date of

birth, address, and social security number.[1]  Employee was hired under the false identify and later suffered serious injuries on March 17, 2025, when a trench in which he was working collapsed, burying him up to his shoulders in mud and pinning his chest against a section of a pipe beneath the mud.  A coworker dug Employee out of the collapsed trench and a supervisor drove him to Fort Sanders Regional Medical Center.  Once there, Employee again provided his false identity to obtain medical treatment for various complaints and was diagnosed with four broken ribs.  Employee returned to the hospital on March 19, reporting bilateral knee pain and low back pain, then again on March 25, with reports of back and jaw pain.

On March 31, Employee filed a petition for benefit determination ("PBD") seeking medical benefits, including a panel of physicians, and attorney's fees.  Employer denied the compensability of Employee's claim, citing as support his misrepresentation of identity and fraud.[2]  A June 3 dispute certification notice identified the disputed issues as compensability, medical benefits, and temporary disability benefits.

Employee returned home to Texas and sought unauthorized medical treatment for his right knee and low back using the same false identity he had used to obtain employment.[3]  He saw Dr. A. Dushi Parameswaran, an orthopedic surgeon, who diagnosed and surgically repaired a meniscus tear in Employee's right knee.  Employee underwent physical therapy post-surgery and was released from treatment for his knee on October 31, 2025.

Employee then sought treatment for his low back with Dr. Rubin S. Bashir in July 2025, who diagnosed Employee with a lumbar disc herniation and associated radiculopathy.  He initially provided conservative treatment, including multiple injections but, due to Employee's lack of improvement, later recommended surgery.

On October 27, Employee filed a request for an expedited hearing asking the court to compel Employer to provide temporary disability and/or medical benefits.  In a February 10, 2026 expedited hearing order, the court granted Employee's request for medical benefits and referred Employer for a potential penalty for its failure to timely provide a panel of physicians.  The trial court concluded that Employee's misrepresentation of his identity "does not void" his status as an employee given the statutory definition of "employee" contained in Tennessee Code Annotated section 50-6-102, which includes the

[1] Employee used the identity of a real individual with a valid social security number who is legally able to work in the United States.  Employer utilized the E-Verify® process to confirm the individual's identity and that he was able to legally work in the United States.

[2] Employer asserts it was unaware Employee was using a false identity until the PBD was filed.

[3] From our review of the record, there is no indication that Employer provided a panel of physicians prior to Employee's return to Texas.

language "whether lawfully or unlawfully employed." The court also determined that the misrepresentation defense is not applicable because Employee's misrepresentation did not concern his physical condition. The court noted that Employer "did not establish a causal connection between [Employee's] false identity and the trench collapse." Although the trial court ordered Employer to authorize additional medical treatment, it did not order the payment of past medical expenses, temporary disability benefits, or attorney's fees and did not address Employer's request that it be relieved of its obligation to pay medical bills on behalf of Employee that were not issued in Employee's real name. Employer has appealed, and we held oral argument on June 9, 2026.

During oral argument, Employer reiterated its assertion that no valid contract of hire existed because the "purported 'hire' was procured through identity fraud and was therefore void *ab initio*; without a valid contract, the workers' compensation system is not implicated." Employer asserted that fraud rendered the contract void and that the trial court did not properly analyze the elements of contract formation. Employer also contends that the misrepresentation defense, which it described as a judicially-created doctrine, should be expanded to include circumstances in which an injured worker is shown to have fraudulently obtained the employment at which he was injured. Finally, Employer asked that we clarify that, under any circumstances, Employer will only be responsible for paying medical bills issued in Employee's real name to prevent it from being compelled to participate in Employee's identity fraud. Employee responded that the plain language of the statute encompasses employees who are not legally employed. Thus, Employee argued, the trial court was correct in concluding Employee is entitled to workers' compensation benefits for his work-related injuries regardless of whether he was authorized to work in the United States or provided false identification. Employee further asserts that any expansion of the misrepresentation defense must come from the Tennessee Supreme Court or the General Assembly. Finally, Employee asserted that the trial court's order clearly awarded medical benefits only in Employee's legal name, and not in the name of his false identity, and thus payment of those medical benefits is not at issue.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. See Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id*. Moreover, the interpretation and application of

statutes and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

## Analysis

On appeal, Employer asserts the trial court erred in concluding Employee is likely to prevail at trial in establishing his entitlement to workers' compensation benefits because there was no valid contract of hire between the parties and, thus, no existing employer-employee relationship. Employer maintains that it detrimentally relied on Employee's knowing and willful misrepresentation regarding his identity, ultimately leading to the work-related injuries.

### *Contract of Hire*

Employer first argues that Tennessee's Workers' Compensation Law requires a "contract of hire . . . written or implied" as a prerequisite to workers' compensation liability.[4] Under Employer's theory, because it never would have hired Employee "but for" the misrepresentation regarding his identity, no valid contract of hire exists and, thus, no workers' compensation benefits are owed. Employer contends that the trial court erred when it "conflated unlawful employment status with identity-based fraud that negates contract formation." According to Employer, the workers' compensation statute addresses "unauthorized or unlawful employment, not situations where no employment contract exists due to fraud. Identity fraud prevents contract formation and thus should bar workers' compensation coverage."

Employee responds that "Tennessee courts have long recognized that employment obtained through false or even criminal misrepresentations does not, by itself, defeat coverage under the Act," citing Tennessee Supreme Court precedent establishing that "employment which has been obtained by the making of false statements – even criminally false statements – is still employment; that is, the technical illegality will not of itself destroy compensation coverage." *Fed. Copper & Aluminum Co. v. Dickey*, 493 S.W.2d 463, 465 (Tenn. 1973). Employee maintains that the nexus on which the analysis should focus is that between an employee's misrepresentation of his or her physical condition and the injury. In Employee's view, misrepresentations regarding identity are not the type of

---

[4] Tennessee Code Annotated section 50-6-102 defines "Employee" to include "every person, including a minor, whether lawfully or unlawfully employed . . . *under any contract of hire* or apprenticeship, written or implied." Tenn. Code Ann. § 50-6-102(10)(A) (2025) (emphasis added).

employee misconduct contemplated by the statute as defeating an injured worker's entitlement to benefits.

We conclude Employer has taken the statutory phrase "under any contract of hire" as used in subsection 102(10)(A) out of context. That phrase is part of a single sentence that also includes the phrase "every person . . . whether lawfully or unlawfully employed." Moreover, the phrase "under any contract of hire" is modified by the phrase "written or implied," indicating that a written agreement is not a critical element of the formation of an employment contract. *Id.* Our review of binding precedent from the Tennessee Supreme Court and Special Workers' Compensation Appeals Panel convinces us that the scope of the Workers' Compensation Law was intended to encompass all persons who provide services to an employer for pay, whether lawfully or unlawfully employed. This interpretation is further supported by the statutory definition of "Employer," which includes any entity "using the services of not less than five (5) persons for pay." Tenn. Code Ann. § 50-6-102(11) (2025). Here, there can be no doubt that Employer was using the services of Employee for pay. The fact that he was not lawfully employed due to his use of a false identity does not change that fact.

*Misrepresentation Defense*

The Tennessee Supreme Court has long recognized a misrepresentation defense in workers' compensation law. In *Anderson v. Chattanooga Gen. Servs. Co.*, 631 S.W.2d 380 (Tenn. 1981), for example, the Court set out a three-part analysis to evaluate misrepresentation claims. To prevail on such a defense, the employer has the burden of showing:

(1)  [T]he employee . . . knowingly and willfully made a false representation *as to his physical condition*;

(2)  [T]he employer . . . relied thereon and such reliance [was] a substantial factor in the hiring; and

(3)  [T]here [is] a causal connection between the false representation and the injury.

*Id.* at 384 (emphasis added).

In *Silva v. Martin Lumber Co.*, No. M2003-00490-WC-R3-CV, 2003 Tenn. LEXIS 1047 (Tenn. Workers' Comp Panel Nov. 5, 2003), the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel addressed a factual scenario strikingly similar to the one before us. In *Silva*, the employee presented falsified documentation in order to gain employment and was subsequently injured while at work. *Id.* at *2-3. The employer denied the claim and questioned on appeal whether an undocumented worker who obtains

5

employment by presenting fraudulent documents may recover workers' compensation benefits. *Id.* at \*2-5. The Panel affirmed the trial court's conclusion that the injured worker was an employee within the meaning of the Workers' Compensation Law regardless of his use of falsified documentation when there was no evidence that the misrepresentation increased his risk of a work-related injury. *Id.* at \*6. The Panel observed that the employee did not make a false representation as to his physical condition and, because there was no causal connection between his false representation and the injury, he was not barred from obtaining workers' compensation benefits. *Id.* at \*6-7.

We also note that the General Assembly has specifically addressed undocumented workers' entitlement to workers' compensation benefits. Tennessee Code Annotated section 50-6-207(3)(F) provides that employees who are "not eligible or authorized to work in the United States" can receive medical benefits, temporary disability benefits, and certain permanent disability benefits but are not entitled to seek increased benefits pursuant to subsection 207(3)(B). Thus, the General Assembly has considered situations in which workers not eligible to work in the United States are injured. Yet, it did not disqualify such workers from receiving any workers' compensation benefits but instead limited the amount of permanent disability such workers could receive. Had the legislature intended to exclude undocumented workers who obtained employment by misrepresenting their identities from the class of undocumented workers entitled to certain benefits, it could have so stated.

In sum, we conclude that the misrepresentation defense is limited to false statements about the worker's physical condition. Here, the misrepresentations Employee made are unrelated to his physical condition or his ability to perform his job duties. As in *Silva*, Employee's misrepresentations were aimed at obtaining employment and did not seek to conceal a physical condition that increased his risk of injury. Our review of the record supports the trial court's determination that Employee sustained a compensable injury in the course and scope of his employment, the risk of which was not impacted by his identity fraud. In short, there is not a sufficient nexus between the misrepresentation and Employee's injuries to bar Employee's recovery of workers' compensation benefits. If the misrepresentation defense is to be expanded to identity fraud, that task must be left to the Tennessee Supreme Court or the General Assembly.

*Payment of Medical Bills*

Turning to Employer's request that we modify the trial court's order to make clear that Employer will only be responsible for the payment of medical bills reflecting Employee's real name, we agree that such a limitation is necessary to prevent Employer from potentially being complicit in any fraudulent activity. Given that Employee has admitted to using the identity of another person to fraudulently obtain employment and certain medical treatment, the processing of past medical bills in two different names could create confusion and the possibility of Employer being held liable for medical bills wholly

unrelated to the current claim, and require it to process and pay bills that contain the name and identifying information of that other person. Accordingly, the trial court's order is modified to show that Employer will be responsible for the payment of medical bills reflecting reasonable and necessary medical treatment causally related to the work injury under Employee's real name.[5]

## Conclusion

For the foregoing reasons, we affirm the trial court's order as modified, and we remand the case for further proceedings. Costs on appeal are taxed to Employer.

---

[5] We further note that nothing in this opinion prevents Employee's medical providers from reissuing medical bills incurred by Employee for reasonable and necessary medical treatment causally related to Employee's compensable injuries with Employee's real name.