VOLUNTEERS OF AMERICA OF MADISON, INC., and others, Respondents, v. INDUSTRIAL COMMISSION and another, Appellants.

*April 11—May 10, 1966.*

608

610

For the appellants the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondents there was a brief by *Aberg, Bell, Blake & Metzner,* and *Gerald J. Bloch,* all of Madison, and oral argument by *Mr. Bloch.*

CURRIE, C. J. This appeal presents an interesting question of statutory interpretation. The statute in question is sec. 102.08, Stats., which provides:

"Epileptics and persons who are totally blind may elect not to be subject to the provisions of this chapter for injuries resulting because of such epilepsy or blindness and still remain subject to its provisions for all other injuries. . . . Such elections shall be made by giving notice to the employer in writing on a form to be furnished by the industrial commission, and filing a copy of such notice with the industrial commission. An election may be revoked by giving written notice to the employer of revocation, and such revocation shall be effective upon filing a copy of such notice with the industrial commission."

The issue is whether this statute bars an epileptic, or those claiming through him, from recovery of workmen's compensation for accidental injury or death benefits when he knowingly has misrepresented to his employer that he is not subject to epileptic seizures, and his epilepsy is a material factor in causing the accident. The circuit court held that under such circumstances the statute does bar recovery.

Our court is committed to the "positional risk" or "increased hazard" doctrine in determining whether an accidental injury to an employee "arises out of his em-

ployment" within the meaning of the Wisconsin Workmen's Compensation Act.[1] Therefore, absent sec. 102.08, Stats., the fact that an epileptic seizure may have caused the employee Cusic to have fallen out of the canoe in an unconscious state which resulted in his drowning would not have barred the workmen's compensation death benefit. This result follows because Cusic's employment placed him in a hazardous position over water and his resultant death by drowning arose out of this hazardous position. Therefore, only by the application of sec. 102.08 can appellants avoid payment of the death benefit.

There appears to be no past decision of this or any other court which is directly in point on the effect such statute has where there has been a knowing false representation by the employee that he is free of an ailment or physical defect described in sec. 102.08, Stats.

The two decisions of other courts which are probably closest in point where reasoning by analogy is resorted to are *Martin Co. v. Carpenter* [2] and *Air Mod Corp. v. Newton.*[3] Both these cases involved "second injury fund" statutes.[4] These statutes, although by different procedures, provided that where an employee had sustained a previous permanent injury and then during the course of employment sustained a subsequent injury, the employer would only be liable for that amount of workmen's compensation as would have been due for such subsequent

[1] *Cutler-Hammer, Inc., v. Industrial Comm.* (1958), 5 Wis. (2d) 247, 252, 254, 92 N. W. (2d) 824; *American Motors Corp. v. Industrial Comm.* (1957), 1 Wis. (2d) 261, 272, 273, 83 N. W. (2d) 714; *Nash-Kelvinator Corp. v. Industrial Comm.* (1954), 266 Wis. 81, 86, 62 N. W. (2d) 567. Cf. *Newman v. Industrial Comm.* (1931), 203 Wis. 358, 234 N. W. 495.

[2] (Fla. 1961), 132 So. (2d) 400.

[3] (Del. 1965), 215 Atl. (2d) 434.

[4] Sec. 440.15 (5), Florida Stats. (1959), and 19 Del. Code Anno., sec. 2327.

injury, without regard to the effect of the prior injury. The statutes further provided that, if the combination of the prior injury and the subsequent injury resulted in total disability, the fund would pay all compensation for total disability in excess of that allowed for the subsequent injury when considered by itself.

In *Martin Co. v. Carpenter* [5] a female employee filed a claim for workmen's compensation for a back injury alleged to have occurred while at work for her employer, the Martin Company. When she had been hired by this employer the year before, she signed a document entitled "Physical Examination Record" which contained questions she had answered. One of these questions asked if she had ever been subject to various diseases and infirmities including "Back Injuries." She had answered this question "No." The Florida court denied recovery on the grounds (1) that no "accident" had occurred at work causing the injury, and (2) that when claimant procured employment she had fraudulently failed to note a twenty-year history of back trouble. The court based its decision with respect to ground (2) on the bases that such a misrepresentation (a) robs the employer of the choice of whether he will hire the employee with the disability and (b) probably prevents the employer from resorting to the special "second injury fund" statute. As noted by the court, that statute encourages employers to hire those afflicted or disabled in some way. It thus manifests the same legislative intent as sec. 102.08, Wis. Stats. The Florida court concluded by adopting the rule that:

". . . a false representation as to physical condition or health made by an employee in procuring employment will preclude the benefits of the Workmen's Compensation Act for an otherwise compensable injury if there is shown to be a causal relationship between the injury and the false representation and if it is also shown that

---

[5] *Supra*, footnote 2.

(1) the employee knew the representation to be false, (2) the employer relied upon the false representation and (3) such reliance resulted in consequent injury to the employer." [6]

The claimant in *Air Mod Corp. v. Newton* [7] sought workmen's compensation benefits for a back injury when he slipped at work. The evidence disclosed that claimant had undergone surgery for back trouble in the year prior to his employment, yet when procuring employment he answered in the negative a questionnaire inquiring whether he had any "physical defect" or had been confined by illness in the past year. In its opinion the Delaware court noted the Delaware "second injury fund" statute and pointed out that claimant's misrepresentation would prevent the employer from resorting to that statute. The court then concluded that an employee would forfeit his rights to workmen's compensation benefits if:

". . . in applying for employment, the employee (1) knowingly and wilfully made a false representation as to his physical condition; and (2) the employer relied upon the false representation and such reliance was a substantial factor in the hiring; and (3) there was a causal connection between the false representation and the injury." [8]

The United States supreme court has recently held in *Still v. Norfolk & W. R. Co.* [9] that false representations by an employee with respect to his physical condition at time of hiring will not bar recovery under the Federal Employers' Liability Act (F.E.L.A.) from the employer railroad for accidental injury, even though the very physical defects fraudulently concealed contributed to the injury and the employer would not have hired him

[6] Id. at page 406.

[7] *Supra*, footnote 3.

[8] *Supra*, footnote 3, at page 440.

[9] (1961), 368 U. S. 35, 82 Sup. Ct. 148, 7 L. Ed. (2d) 103.

if it had known of their existence. The rationale of this holding is that the legislative policy embodied in the F.E.L.A. is that "a railroad should pay damages to its workers and their families for personal injuries *inflicted by the railroad's negligence* upon those who perform its duties . . . ." [10] (Emphasis supplied.)

We do not consider the holding in the *Still Case* persuasive in the instant case. Here we have an entirely different legislative policy present in sec. 102.08, Stats. This policy is to aid epileptics in obtaining employment by permitting them to elect not to be subject to the Workmen's Compensation Act with respect to injuries resulting because of the epilepsy. Implicit in this statute is the requirement that the employee will not fraudulently conceal his epileptic condition from his employer.

Suppose the situation of an epileptic who discloses his condition to his prospective employer and as a consequence the employer requests and is provided with a waiver pursuant to sec. 102.08, Stats. If this employee, during course of his employment, should fall into the water because of an epileptic seizure and drown, neither his dependents nor the state would recover a workmen's compensation death benefit. It would indeed be an absurd result if a death benefit would be payable in a situation where the employee's epileptic condition was fraudulently concealed from the employer and the same type of accident occurred. Such an interpretation of the statute would tend to put a premium on dishonesty. This court has many times held that in construing a statute, unreasonableness or absurdity is to be avoided if the

[10] Id. at page 44. The *Still* decision overruled a number of F.E.L.A. cases rendered by the federal courts subsequent to *Minneapolis, St. P. & S. S. M. R. Co. v. Rock* (1929), 279 U. S. 410, 49 Sup. Ct. 363, 73 L. Ed. 766, in which recovery had been denied where the employee fraudulently substituted another to take his physical examination at time of hiring. For these cases see footnote 11, pages 43, 44 of the *Still Case*.

statute is open to a reasonable alternative interpretation.[11]

We, therefore, determine that the circuit court rightly concluded that in the light of sec. 102.08, Stats., the false representation knowingly made by Cusic to Volunteers at time of hiring that he had not been subject to epileptic seizures would preclude the benefits of the Workmen's Compensation Act if his fall resulted from an attack of epilepsy. Thus the commission improperly found that it was immaterial what caused Cusic to fall from the canoe.

This conclusion requires affirming the judgment which remanded the cause to the commission to make a finding with respect to the cause of Cusic's fall into the water.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.

FAIRCHILD, J. (*dissenting*). In sec. 102.08, Stats., the legislature has acted to alleviate the problem of the epileptic or totally blind person who is refused employment because the employer desires to avoid workmen's compensation claims for injuries resulting from such handicap. The only employer it expressly protects is an employer who knew of the handicap and insisted on a waiver as a condition of employment.

The legislature has not provided generally for denial of compensation to an injured employee whose injuries arise out of a disability or handicap which he has misrepresented or concealed, and I would not read such provision for denial in the case of concealed epilepsy into sec. 102.08, Stats. I would reverse.

[11] *State v. Fisher* (1962), 17 Wis. (2d) 141, 146, 115 N. W. (2d) 553; *Wisconsin Valley Improvement Co. v. Public Service Comm.* (1960), 9 Wis. (2d) 606, 615, 101 N. W. (2d) 798; *State v. Surma* (1953), 263 Wis. 388, 394, 57 N. W. (2d) 370.