JAEGER BAKING COMPANY, Plaintiff-Respondent, v. KRETSCHMANN, and another, Defendant-Appellants.†

Court of Appeals

*No. 77–562. Argued September 8, 1978.—Decided December 19, 1978.*
(Also reported in 275 N.W.2d 97.)

---

† Petition to review granted February 19, 1979.

376

For the defendant-appellant there was a brief by *Richard D. Hicks* and *Jonathan B. Levine* of *Shneidman & Myers,* Milwaukee, and oral argument by *Jonathan B. Levine.*

For the plaintiff-respondent there was a brief by *Walther and Halling,* Milwaukee, and oral argument by *David B. Halling* of *Walther and Halling.*

Before Gartzke, P.J., Bablitch and Dykman, JJ.

BABLITCH, J. Appellants Kretschmann (claimant) and Department of Industry, Labor and Human Relations (department) appeal from a circuit court judgment reversing the findings and conclusions of the department which awarded worker's compensation benefits to claimant.

Claimant was employed by the respondent Jaeger Baking Co. (company). On January 27, 1974, his workshift began at 2:00 a.m. He took a bus to work, alighting at a location not disclosed in the record.

The company's plant, located in the city of Milwaukee, is bounded on the northeast by Ninth Street and on the southwest by Tenth Street. Somers Street borders the easterly side of the plant, intersecting Ninth Street at right angles. The company maintains a parking lot for use by its employees across the street from the plant on Tenth Street. The entrance to the building generally used by the employees is located at the opposite and northerly end of the building, fronting on Ninth Street. Employees who drive to work customarily proceed from the parking lot to that entrance by traversing a public sidewalk adjacent to the east end of the building along Somers Street.

After claimant alighted from his bus he proceeded to walk along the Somers Street sidewalk towards the north

entrance of the building. He was attacked and severely beaten by two unknown assailants at the corner of Somers and Ninth Streets, just as he was about to turn left towards the entrance. The assailants fled when an employee inside the building, hearing noises of the struggle, opened the window and yelled at them. It is undisputed that at the time of the attack claimant was at a point on the public sidewalk customarily traveled by employees using the parking lot. There was testimony that street crime was a continuing problem in that particular neighborhood.

The department found claimant entitled to worker's compensation benefits. The circuit court reversed the department. The issue is whether the legislature, in amending sec. 102.03 (1) (c) 1, Stats., to cover "any employe going between an employer's designated parking lot and the employer's work premises" intended to limit coverage to employees who actually made use of the parking lot.[1] We hold that it did not, and reverse the circuit court.

Section 102.03, Stats., sets forth the conditions of an employer's liability under the Worker's Compensation Act. Section 102.03 (1) (c) 1, Stats., imposes liability

[w]here, at the time of the injury, the employe is performing service growing out of and incidental to his employment. Every employe going to and from his employment in the ordinary and usual way, while on the premises of his employer, or while in the immediate vi-

---

[1] The company also contends that claimant is barred from recovery because he took a bus to work on this night, whereas he usually took a cab when the weather was inclement. Thus, they submit, he was not going to work "in the ordinary and usual way." This argument has little merit, and the trial court did not pass upon it. The statutory requirement applicable is that the claimant be "going between" the lot and the plant "in the ordinary and usual way" at the time of injury. The evidence shows that at all times while he was on the path between the two points he was simply walking along. His method of transport to the path itself is irrelevant.

cinity thereof if the injury results from an occurrence on the premises, shall be deemed to be performing service growing out of and incidental to his employment; *so shall any employe going between an employer's designated parking lot and the employer's work premises while on a direct route and in the ordinary and usual way. . . .*

The italicized portion was added by the legislature in 1971. Prior to 1971, the Wisconsin Supreme Court had held that the coverage provided by the earlier statute did apply to employees injured in an employer's parking lot, *American Motors Corp. v. Industrial Comm.*, 18 Wis. 2d 246, 118 N.W.2d 181 (1962), but did not extend to employees who were injured on a public sidewalk while proceeding from their employer's parking lot to its place of employment. *Frisbie v. ILHR Department*, 45 Wis.2d 80, 172 N.W.2d 346 (1969), and *Halama v. ILHR Department*, 48 Wis.2d 328, 179 N.W.2d 784 (1970). In denying coverage in *Frisbie* and *Halama*, the court stated that "[a] strong argument can be made for the majority rule that compensation coverage extends to an employee injured while crossing a public street between an employer's parking lot and the employer's work premises." *Frisbie*, 45 Wis.2d at 89; *Halama*, 48 Wis.2d at 332.

In *Halama*, the court made a

judicial suggestion that the legislative branch consider broadening compensation coverage to provide that where a claimant is injured while crossing a public road or walk between an employer-owned parking lot and the work premises, he be covered by the act while on a necessary route between the two portions of the employer's premises. 48 Wis.2d at 332–33.

A note appended to the original bill adopted, prepared by the Workmen's Compensation Advisory Council, refers to the *Halama* case, and implies that the amendment is made in response to the court's invitation.

The circuit court, in "reluctantly" reversing the department, held that the "plain meaning of the phrase 'going between' implied that the employee must have actually used the parking lot as a prerequisite to his entitlement to relief under this amendment." We disagree with this interpretation. The phrase "going between" is ambiguous in the context of this statutory provision. It could fairly mean any of the following:[2]

(1) going from commencement point A to destination point B;

(2) going along a path which exists in the physical space between the two points, but neither beginning nor ending at either point;

(3) going from commencement point A towards B on the path between them with no intention of arriving at B, or, conversely, going to point B on that path, without having commenced at point A.

The trial court believed that the phrase "while on a direct route" would be rendered meaningless unless the first and narrowest of these alternative interpretations were accepted. The phrase does not compel this conclusion. One could be on a direct route or course[3] between two points without having commenced at one, or intending to end at the other. We read "while on a direct route" to mean without deviation from the course, rather than as mandating the commencement and destination points construction of "going between" adopted by the trial court.

Finally, the trial court concluded that, since the amendment was made in response to the *Halama* and *Frisbie* cases, and since both cases involved injuries

[2] See, e.g., the lengthy definitions of "between" in *Webster's Third New International Dictionary* 209 (1976).

[3] *Webster's, supra,* at 1981, defines "route" as "a line or direction of travel: COURSE, TRACK."

to employees who had actually used the employer's parking lot, it could be inferred that the legislature intended to limit the extension of coverage as narrowly as possible and to include only those employees who were moving from one portion of the employer's premises to another. While it is appropriate to look to the judicial cases which prompted the legislature to broaden the scope of coverage,[4] we find no authority (and none is cited to us) for the proposition that a remedial amendment should be limited in its scope by the facts of the case(s) which inspired it. Rather, it is the duty of this court to determine from all recognized sources, the evil sought to be remedied by the legislature, and to so construe the language as to implement its full purpose. *City of Madison v. Hyland, Hall & Co.*, 73 Wis.2d 364, 373, 243 N.W.2d 422 (1976).

■

The Workers' Compensation Act is a remedial act and is entitled to a liberal construction to achieve its purposes. *Cruz v. ILHR Department*, 81 Wis.2d 442, 450, 260 N.W.2d 692 (1978).

The purpose of the Workers' Compensation Act is "to provide financial and medical benefits to the victim of 'work-connected' injuries . . . regardless of fault, and to allocate the financial burden to the most appropriate source, the employer, and, ultimately the consumer of the produce." *Klein Industrial Salvage v. ILHR Dept.*, 80 Wis.2d 457, 462, 259 N.W.2d 124 (1977), citing *Brenne v. ILHR Department*, 38 Wis.2d 84, 91–92, 156 N.W.2d 497 (1968).

■

The general rule is that injuries sustained by employees going to or coming from work are not com-

---

[4] *Town of Madison v. City of Madison*, 12 Wis.2d 100, 106, 106 N.W.2d 264 (1960), and see Sutherland, *Statutory Construction*, "Extrinsic Aids—Legislative History," §48.01, at 181 *et seq.* (4th ed. 1973).

pensable. This rule is known as the "going and coming" rule. 1 Larson, *Workmen's Compensation,* sec. 15 *et seq.* (1st ed. 1952). Numerous exceptions to the rule have received judicial recognition, most falling under either the "special hazards" doctrine, Larson, *supra,* sec. 15.13, or under a principle extending coverage to employees injured while passing between two non-contiguous portions of the employer's premises, such as a plant and a parking lot. Larson, *supra,* sec. 15.14. Larson suggests that the appropriate logical underpinning justifying these exceptions is that, where a causal connection may be found between the conditions under which the employee must approach or leave the premises and the potential occurrence of injury, then the injury may truly be said to be one "arising out of" the employment. Larson, *supra,* sec. 15.15, at 4–25. With respect to the "parking lot" exception, Larson notes that

[b]y establishing or sponsoring a parking lot not contiguous to the working premises, the employer has created the necessity for encountering the hazards lying between these two portions of the premises. Larson, *supra,* sec. 15.14, at 4–21 (1st ed. Supp. 1978).

Having "created the necessity for encountering the hazards," Larson implies, the employer has "assumed control" over the area where the hazard is likely to cause injury to employees exposed to it, and is responsible for those injuries.[5]

In Wisconsin the legislature has recognized this responsibility by statutory amendment. Having done so, can it have intended to limit its scope to only those employees who actually make use of the parking lot?

---

[5] As Larson notes, these policy considerations do not apply "to a trip to some bus stop or railway terminal or to some parking location on a public street *over which the employer has no conceivable control.*" Larson, *supra,* §15.14, at 4–21 (1st ed. Supp. 1978) (Emphasis supplied.)

The argument overlooks that fact that the employer has precisely the same degree of control over the "hazardous area" between the two points, regardless of the particular employee's reason for being within it. The fact that claimant was or was not proceeding *from* the parking lot bore no relation to his injury. The fact that he was proceeding *to work*, along a path over which the employer had assumed control, subjected him to the same hazards and potential injuries as those to which users of the lot were subjected. There is no reason to suppose the legislature categorized injuries sustained by parking lot users as "arising out of the employment," but intended to close that category to non-users who receive identical injuries, from the same hazard, at the same time and place.

Where more than one construction of a statute is possible, the reasonable meaning, one which avoids absurd results, is to be preferred. *Falkner v. Northern States Power Co.*, 75 Wis.2d 116, 124, 248 N.W.2d 885 (1977); *Volunteers of America v. Industrial Comm.*, 30 Wis.2d 607, 616–17, 141 N.W.2d 890 (1966). In construing any statute, an unconstitutional interpretation is to be avoided. *State ex rel. Strykowski v. Wilkie*, 81 Wis.2d 491, 526, 261 N.W.2d 434 (1978); *State ex rel. Harvey v. Morgan*, 30 Wis.2d 1, 13, 139 N.W.2d 585 (1966), cited in *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis.2d 32, 47, 205 N.W.2d 784 (1973).

Were this statute construed to limit coverage to only those employees who were en route along the path between plant and parking lot because they had "used" or were intending to "use" the latter, absurd and arguably unconstitutional results would follow. Employees leaving work together along the path and injured by the same cause would be accorded different treatment depending upon their intended modes of ultimate transportation

on a given day. Employees sharing a car pool and left by the driver at a point midway between plant and parking lot would not be covered, though the driver injured from the same cause after parking the car would be. An employee walking to work on a course requiring him to go through the parking lot and on towards the plant on the usual path would be excluded merely because he had not "used" the lot. There is no logical basis for distinguishing between these two classes of employees, nor for determining that the employer's responsibility for their injuries differs as between them.

Consequently, we hold that an employee injured while going to or from work on a direct route between his employers premises and designated parking lot has received an injury "arising out of the employment" within the meaning of the act, regardless of his use or intent to make use of the parking lot.

*By the Court.*—Judgment reversed.