**UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff/Appellee,**

v.

**John D. EDWARDS, Defendant/Appellant.**

Supreme Court of Tennessee, at Knoxville.

Jan. 17, 1989.

Jerry A. Farmer, Fox & Farmer, P.C., Knoxville, for defendant/appellant.

Joe Nicholson, Nicholson, Brown and Garner, Maryville, for plaintiff/appellee.

OPINION

O'BRIEN, Justice.

This workers' compensation suit was filed by the worker's compensation insurance carrier for Service Construction Company, the employer of the defendant.

The complaint alleged that on 3 July 1986 defendant was hired by Service Construction Company to perform heavy construction work. Defendant certified that he had no previous back injury and that he did not have any physical condition which would limit his ability to perform the job for which he was employed.

The complaint also alleged that in reality he had previous fractures of his back and had undergone disc chemolysis for the prior injury. That the employer relied upon

the false representations of the defendant concerning his physical condition and this was a material and substantial factor in the hiring of defendant. That defendant should be barred from recovery of workers' compensation benefits by virtue of his false representation of his physical condition on the written employment application. That defendant sustained an injury on 2 October 1986 for which he was seeking a recovery under the Workers' Compensation Act.

Defendant testified that he interviewed for employment with Service Construction Company with a man named Allen Kent Tipton, Jr., who was a job foreman. He testified that he filled out a personal safety questionnaire on the application for employment and certified that the answers given on the application and questionnaire were true and complete to the best of his knowledge. His educational background included a high school diploma, some night school and some training in trades. He acknowledged that he had indicated on the form that he never had any previous back injury. He admitted that in 1981 he had suffered a back injury which required injections of a material to dissolve discs protruding in the disc space. He was hospitalized at the time of that injury. He had suffered another injury in a fall in 1985 and at that time had given the treating physician a report of his prior health history. After he had discussed his employment with Mr. Tipton he was introduced to Mr. Allen Bates, the office manager. Within a week after he was hired he received a company rule book and advised his job foreman that he had suffered a previous back injury. His foreman did not take any action to terminate him or change the job he was doing. He says that the job he applied for was pipe-layer or any skilled trade. He says that six months after his prior injury, sustained as a Chicago fireman, he was in very good physical shape. Prior to hiring on with Service Construction Company he had worked in other construction jobs. He did not suffer any back injury in the fall which occurred in 1985. He also informed a successor job foreman about his prior back injury. They were engaged in heavy lifting and carrying and

he told the foreman he was sore because he had to catch a tank which was falling down the stairs and that he was not used to that hard, heavy-duty work with a jackhammer and carrying.

Mr. Tipton, the job foreman who interviewed defendant testified he recommended his employment. He recalled the conversation a few days after Edwards was hired and remembered generally that he had been injured in Chicago. They discussed how it occurred and the rehabilitation process he had undergone. He was satisfied both before and after the conversation that defendant was physically able to do the job. Defendant's work habits, ability and his attitude were good and he had no negative statements to make in that regard. Most of the work they did was heavy labor. He learned about defendant's previous back problems in normal everyday conversation as they were working along.

Allen Bates testified he was the office manager on the project when defendant was hired. It was his job, among other things, to verify the application for employment including the personal safety questionnaire. If there were any problems with the application in that regard he would solicit further information from the applicant to insure that the injury would not be a problem on the job. The applicant would be asked to describe the previous injury and any treatment he received. He would be required to go to a doctor to have the injury identified and to determine if he was able to go to work. He said Service Construction Company relied totally on the statement made in the employment questionnaire. Defendant was hired in as a laborer. He did not learn about defendant's prior injuries until after he had undergone surgery for his second on-the-job injury which is the subject of this complaint.

Dr. John Bell testified that defendant was treated by various members of his clinic for the injury he sustained in October of 1986. After their original examination they diagnosed defendant's complaint as an acute compression fracture L2 and L3 lumbar vertebrae with left sciatic nerve root irritation. He was hospitalized for more

evaluation. Further medical work-up revealed that these fractures were not new injuries. It was discovered he had a ruptured disc at the L4–5 level, and surgery was recommended for removal of this disc. He related the ruptured disc to the injury sustained on 2 October 1986. He was treated until March 1987 and assigned a permanent medical impairment rating of twenty (20%) percent to the body as a whole, ten (10%) percent of which was attributed to the latter injury and the other ten (10%) percent based upon aggravation of the previous problems in his back. Dr. Bell also related that they saw defendant initially on 15 April 1985 for evaluation of a fall in a Kroger grocery store. At that time he gave a history of having previous problems with his back for which he required treatment including chymopapain injections for ruptured discs at the L4–5 and lumbo-sacral levels. X-rays at that time demonstrated rather severe degenerative disc disease at the lumbo-sacral level. It was Dr. Bell's opinion that the prior injury sustained by Mr. Edwards would have created a condition preventing a recommendation for him to work in the heavy construction business. Defendant also reported that he struck his back in August of 1986. X-rays taken at that time were negative.

When defendant described the circumstances of his injury he said he was on a scaffold twelve feet above the ground using a jackhammer weighing approximately 90 to 120 pounds. They were cutting a six by six foot opening through a two foot concrete wall. Another employee was holding the front of the jackhammer with a rope so defendant could balance on the scaffold. A scaffold board broke, his foot slipped through the scaffolding and stuck. The jackhammer was a type which could not be shut off manually. It was approximately thirty seconds before another employee shut off the compressor. He was standing in this incapacitated position holding the jackhammer during the interval. This occurred at the end of the work week. By Monday he could not walk. When he reported to the job site he was sent to get medical attention.

The trial court entered judgment holding that the evidence preponderated in favor of the plaintiff and found that: (1) Defendant knowingly and willfully made false representations of his physical condition at the time he was hired in reference to previous back injuries; (2) that representatives of the employer who had the right and the obligation to review data submitted did, in fact, rely upon the representations made by defendant to the employer and that the same constituted a substantial factor in the decision to hire him; (3) that sufficient expert medical testimony established a causal connection between the previous non-disclosed back injuries and the injury suffered by the employee on the job.

This cause of action arose subsequent to 1 July 1985. The scope of review by this Court of issues of fact is "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." T.C.A. § 50–6–225(e). The factual issues are minimal. No dispute exists between the parties that defendant was injured in the course and scope of his employment. The issue before the Court is if the trial court's findings in the order dismissing the petition are supported by a preponderance of the evidence.

■ For a misrepresentation in an employee's application to bar recovery of benefits, all three factors noted by the trial court in the judgment must be found, *Beasley v. U.S. Fidelity and Guaranty Company*, 699 S.W.2d 143, 145 (Tenn.1985). Defendant insists that because he filled out the application form in a hurried fashion the misrepresentation of his physical condition was inadvertent. That would hardly appear likely in view of his extensive history of back injury.

Each of the parties rely on *Foster v. Esis Incorporated*, 563 S.W.2d 180 (Tenn.1978) for their respective positions on this issue. *Foster* stands for the proposition that absent deception on the part of a prospective employee who had some physical impairment he would not be hired without a medical release indicating his ability to perform the job. It does not stand for the principle

advocated by defendant that his foreman's knowledge of his medical history must be imputed to the employer. The Court said in *Foster* at p. 183, this rule is intended to protect those who exercise good faith, and is not applicable where the party advocating the rule was aware of circumstances which plainly indicated that the agent would not advise his principle.

■ The evidence is plain that the employer did rely upon the false representation by defendant in the hiring process and that reliance was a substantial factor in the decision to hire. The medical proof also establishes a causal connection between the false representation and the injury suffered by the defendant.[1] Dr. Bell, the treating physician, testified that defendant was a bad candidate for the type of work in which he was engaged and sooner or later would have probably expected difficulty of the nature which he suffered. The doctor also testified that defendant's prior history of back injuries would not warrant a recommendation for work in the heavy construction business. Our earlier discussion includes a review of defendant's previous back problems. The operation required in this case was in the same area of his back as the injury for which he had been treated previously with the chymopapain injections designed to dissolve a ruptured disc. Common sense dictates that a prior injury of the nature suffered by defendant would create a predisposition to further injury considering the nature of the work involved. Such a predisposition has been found to establish a causal connection. See *Beasley*, supra at 146. The evidence does not preponderate against the trial court's findings in relation to a causal connection between the concealed condition and the injury sustained by defendant.

We sustain the findings of the trial court and affirm the judgment denying compen-

sation. The costs are assessed to appellant.

HARBISON, C.J., and FONES and COOPER, JJ.

DROWOTA, J., dissents in separate opinion.

DROWOTA, Justice, dissenting.

I respectfully dissent from the holding of the majority in this case. Since the accident in this case occurred after July 1, 1985, the scope of review in this Court on issues of fact is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.C.A. § 50-6-225(e) (Supp. 1988). As Chief Justice Harbison stated in *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987), "this standard of review differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases."

John Edwards applied for a job, was hired, and immediately began work on July 3, 1986, with Service Construction Company. Three months later on October 2, 1986, he was seriously and permanently injured while operating a jackhammer on a 12 foot scaffold. The jackhammer weighed 90 to 120 pounds and was running when Edwards' left foot slipped through the scaffold flooring and he lost his balance. He was thus trapped with the jackhammer running and was shaken around like "a rubber snake" for about 30 seconds before another employee shut off the compressor. Dr. John H. Bell testified that as a result of this accident Edwards had a ruptured disc at the L-4-5 level, and surgery was recommended for removal of the disc. Dr. Bell related the ruptured disc to the injury sustained by Edwards on October 2, 1986. Dr.

---

1. The dissent concludes we have held that: "[A]n employee will not be allowed to overcome a mistake on an [employment] application by a good faith disclosure following employment." That is a misconception not to be found in the majority opinion. We held that the evidence did not preponderate against the trial courts

finding of estoppel on the three criteria set forth in *Foster v. Esis, infra*. Defendant's casual, on the job discussion of his prior injury with his job foreman did not constitute notice to the employer so as to abrogate his misrepresentation on the employment application.

Bell assigned a permanent medical impairment rating of 10% attributable to this injury. It is thus undisputed that Edwards was injured in the course and scope of his employment and that he sustained a permanent medical impairment.

U.S.F. & G., the workers' compensation insurance carrier for Service Construction Company relies upon the affirmative defense of fraudulent misrepresentation on the job application. The trial judge found that the evidence supports such a defense and dismissed Edwards' claim to worker's compensation benefits.

The majority opinion, in affirming the trial judge, points out a tripartite test when dealing with misrepresentations on an employment application. In order to prevail, the employer must prove: (1) the employee must have knowingly and willfully made a false representation as to his physical condition; (2) the employer must have relied upon the false representation, and this reliance must have been a substantial factor in the hiring; and (3) there must have been a causal connection between the false representation and the injury suffered by the employee. *Laminite Plastics Mfg. Co. v. Greene,* 561 S.W.2d 458 (Tenn.1978). All three factors are required to bar recovery.

The trial court found "the Defendant knowingly and willfully made false representations of his physical condition at the time he was hired by answering 'no' to the inquiry relative to previous back injury." The trial court also found that the employer relied upon the representations made by Edwards and such reliance constituted a substantial factor in the decision to hire. I disagree.

Edwards testified that Allen Tipton, who was a job foreman, was the man who interviewed him for employment and to his knowledge was the man who hired him.[1]

Edwards testified that one of the questions on the application concerned prior back injuries and was marked "No", when, in fact, he had sustained a prior back injury in 1981, while putting out a fire as a Chicago fireman. Edwards stated that in 1981, two firemen were falling into a basement and in an attempt to save them, he grabbed them and in so doing, injured his back. He stated that six months after his injury he was in good physical condition. He received no worker's compensation benefits or benefits from the City of Chicago. After this injury and prior to being hired by Service Construction Company, he had worked on other construction jobs with McNulty Brothers and L & R Management, and had no problems with his back. As the majority opinion points out, within a week after Edwards was hired, he received a company rule book and advised his job foreman, Allen Tipton, that he had suffered a previous back injury with the Chicago fire department. His foreman did not take any action to terminate him or change the job he was doing. His foreman testified that he did in fact recall the conversation a few days after Edwards was hired and remembered generally that he had been injured in Chicago. They discussed how it occurred and the rehabilitation process he had undergone. Tipton was satisfied both before and after the conversation that Edwards was physically able to do the job. Edwards' work habits, ability and his attitude were good and Tipton had no negative statements to make in that regard.

In addition to discussing his prior back injury with Tipton, Edwards also disclosed his prior back injury to Charles Pyles, Jr., who became his foreman after Tipton left Service Construction Company's employment. Pyles also took no action after receiving the information concerning the pri-

---

1. Cf. *Kirk v. Magnavox Consumer Electronics Co.,* 665 S.W.2d 711 (Tenn.1984) wherein we held, "notice to the agent or representative of the employer is a sufficient notice to the employer, provided the agent or representative to whom notice is given has actual or apparent authority to receive notice on behalf of the employer. [Citations omitted] It must be someone whose position justified the inference that authority has been delegated to him by the employer as his representative to receive notice of accidental injury. [Citations omitted] ... notice to a superior of the employee may be sufficient to notify the employer, it is not true that "superiors" of the injured employee are the only persons authorized by the employer to receive notice on his behalf; such authority may be found in the nature of the employee's duties as well as in his "rank" in the employment hierarchy. [Citations omitted]"

or back injury. There was obviously no attempt by Edwards to conceal his prior back injury.

There being no dispute that Edwards was injured in the course and scope of his employment, the sole issue before this Court is whether he should be barred from recovery due to a misrepresentation on an employment application, when he made a good faith attempt to cure the defect within a week of filling out the application.

The trial judge found Edwards knowingly and willfully made false representations. This is not the typical case of an applicant having been previously turned down for other jobs, thus willfully making false representations in order to be hired. Edwards had never been denied employment by an employer because he had told that employer about his previous back injury. He was in a hurry, and admittedly made a mistake. The employer relies upon the case of *Foster v. Esis, Inc.*, 563 S.W.2d 180 (1978). In *Foster*, the employee intentionally and fraudulently failed to disclose her history of prior back trouble on her application. In *Foster*, the employee was engaged in a conspiracy with a supervisor to conceal her medical history from her employer. In the case at bar, Edwards mistakenly failed to disclose. However, there is absolutely no proof that such failure was fraudulent or intentional. The record clearly shows that within a week of his hiring he made a good faith attempt to cure his mistake.

The trial judge also held that there was sufficient expert medical testimony to establish a causal connection between the previous non-disclosed back injuries and the injury suffered by Edwards on the job. The only expert medical proof in this record is that of Dr. John H. Bell, an orthopedic surgeon. Dr. Bell testified that Edwards had a completely ruptured disc at L4–5 level and that the disc was surgically removed on October 16, 1986. He stated that the ruptured disc was caused by the injury of October 2, 1986, and the injury sustained would have occurred even if Edwards had had no previous injury.

The majority found that "the evidence does not preponderate against the trial court's finding in relation to a causal connection between the concealed condition and the injury sustained by defendant." Dr. Bell testified that it was his impression that the October 2nd injury caused the ruptured disc, and this had no relation to the prior injuries. There is no evidence in this record that Edwards attempted to conceal his prior injury, in fact, he not only advised his foreman who took his application, but also advised the foreman who replaced Tipton. Neither foreman took any action. Under the majority's holding, once a mistake has been made in filling out a job application, notice to the employer will not cure the defect and the employer can always rely upon the misrepresentation in the job application, if the employee is subsequently injured. Such a result is totally unacceptable.

I am of the opinion that when an employee is retained in employment after the employer has acquired knowledge of an incorrect answer in an application, and when such knowledge is acquired prior to the employee's subsequent injury, such misrepresentation by the employee and reliance by the employer are no longer valid defenses and cannot defeat an employee's recovery of worker's compensation benefits.

As a result of the majority opinion, an employee will not be allowed to overcome a mistake on an application by a good faith disclosure following employment. I cannot approve of such a result. I find that the evidence preponderates against the holding of the trial judge in this case.