Jeffrey S. OESTERREICH, Claimant and Appellant,

v.

CANTON–INWOOD HOSPITAL, Employer and Appellee,

and

Phico Insurance Company, Insurer and Appellee.

No. 18238.

Supreme Court of South Dakota.

Considered on Briefs Oct. 7, 1993.

Decided Feb. 2, 1994.

Rehearing Denied March 2, 1994.

Doug Cummings, Cummings Law Office, Sioux Falls, for appellant.

Susan Jansa Brunick, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellees.

AMUNDSON, Justice.

Jeffrey Oesterreich (Oesterreich) appeals the circuit court's decision which reversed the South Dakota Department of Labor (Department) decision granting Oesterreich worker's compensation benefits from Canton–Inwood Hospital (Hospital). We affirm.

## FACTS

In August 1987, Oesterreich fell from a roof and injured his back. Immediately after the injury, Oesterreich experienced pain and sought treatment for his back and cervical area. On September 11, 1987, Oesterreich began a series of chiropractic treatments from Michael Swenson, D.C. Dr. Swenson noted that claimant was in pain and walked with an antalgic lean and could not straighten up. Dr. Swenson took x-rays and diagnosed Oesterreich as suffering from an acute lumbar disk protrusion with a possible rupture.

Dr. Swenson treated Oesterreich for this injury on twelve occasions from September through November of 1987. Although Dr. Swenson believed Oesterreich was orthopedically negative, on October 26, 1987, Dr. Swenson estimated that three additional months would be needed for a back to heal from this type of injury. Dr. Swenson cautioned Oesterreich against lifting or other strenuous activities and instructed him to be careful not to re-injure his back.

On November 25, 1987, Oesterreich completed an application for a respiratory therapist position with Hospital. Hospital's application required applicants to provide a health history. Evidence at the Department hearing disclosed that one question on the application asked the applicant if they "ever had or do you have" back pain. Oesterreich answered "No" to this question. Another question on the application asked the applicant if they "ever had or do you have" a back injury. Oesterreich responded "No". Oesterreich did not answer a question asking whether or not he was currently under a doctor's care. Department also found that Oesterreich had misrepresented the level of his education. At the end of the application Oesterreich certified "to the best of my knowledge, the foregoing statements are correct and complete, and may be used to whatever extent necessary in connection with my application for and employment by [Hospital]."

This position requires substantial amounts of standing and walking as well as lifting and positioning patients. Hospital used the health history portion of the application to determine whether applicants were physically capable of handling the requirements of the position. This information was sought because a respiratory therapist employed by Hospital had previously sustained a back injury while lifting patients.

Oesterreich returned to Dr. Swenson for a scheduled chiropractic treatment just two days after completing the application. Hospital hired Oesterreich as respiratory therapist in December, 1987. The record indicates that Oesterreich would not have been hired had Hospital been aware of his back injury and current, scheduled treatments. John Devick, the Hospital's administrator, learned of Oesterreich's prior back injury sometime during the fall of 1988.

Oesterreich continued to seek medical assistance while working at Hospital. During a November 17, 1988 treatment at the VA Hospital, Oesterreich explained his back problem to Dr. Walter Carlson in his own handwriting: "I used to be active water skiing, snow skiing, roller skating, running, and sports, tennis, etc. Now I am not able to do these anymore in my prime of life and may have to change my profession in medical field as mentioned by doctors." After a lumbar CT scan was ordered and performed by the VA Hospital, Oesterreich was diagnosed as having herniated disks in his lower back.

In 1988, Oesterreich contacted an attorney to pursue a claim against the homeowner for the injuries suffered in the 1987 fall. During November 1988, Oesterreich sought a second opinion concerning his back injury from Dr. Robert Van Demark, M.D. Dr. Van Demark characterized Oesterreich's problem as a "medical/legal" case.

Throughout the spring of 1989, Oesterreich continued medical treatment at the VA Hospital. On July 24, 1989, claimant underwent a CT scan of the neck at the VA Hospital. The test showed a degenerative disk disease, spurring, and possible mild disk bulging. Oesterreich claims to have aggravated his back condition when lifting a patient while working at Hospital on July 28, 1989. Oesterreich was hospitalized for this injury at Sioux Valley Hospital in Sioux Falls, South Dakota, on July 29, 1989, and discharged on August 10, 1989. Although he was discharged from Sioux Valley in stable condition with improvement in his back pain, he did not return to work at Hospital.

After being released from Sioux Valley Oesterreich was referred to Dr. John L. Merritt of the Mayo Clinic. After reviewing some of Oesterreich's prior medical history, Dr. Merritt apportioned Oesterreich's symptoms between the 1987 fall and the 1989 lifting incident. Merritt's report of Oesterreich stated: "Based on his history and physical findings of limitation of motion, the substantial contributing factor to both his neck and back pain was the August 19, 1987, fall ... we would attribute 60% of his chronic and persistent symptoms to the 1987 fall and 40% to the lifting injury in July of 1989."

Hospital paid Oesterreich temporary total disability benefits until December 22, 1989. Oesterreich then petitioned Department for further temporary total disability benefits, as well as permanent partial and vocational rehabilitation benefits. Department bifurcated the hearing on Hospital's intentional misrepresentation defense and Oesterreich's claim for benefits. Department found that "[Oesterreich] intentionally mislead [Hospital] about his preexisting back and neck conditions, as well as his level of education, in order to obtain employment, knowing that he would not be hired if he revealed the extent of his problems." Following two hearings, the Department held that (1) Hospital was not permitted under South Dakota worker's compensation statutes to assert intentional misrepresentation as a defense and (2) Oesterreich was not entitled to the additional benefits. Oesterreich then appealed Department's denial of benefits to the circuit court and Hospital appealed Department's decision concerning the intentional misrepresentation defense. The circuit court affirmed Department's denial of benefits and reversed Department's rejection of the intentional misrepresentation defense. Oesterreich appeals.

### ISSUE

Is Oesterreich barred from receiving worker's compensation benefits because he intentionally misrepresented his health history on an employment application?

■ This issue is one of first impression in South Dakota. The facts are not disputed so this is a question of law, and is fully reviewable by this court under the de novo standard of review. *Dubbelde v. John Morrell & Co.*, 473 N.W.2d 500, 501 (S.D.1991).

■ There is no question that worker's compensation statutes are to be liberally construed in favor of injured employees. *Wilcox v. City of Winner*, 446 N.W.2d 772, 775 (S.D. 1989). On the other hand, this liberal interpretation should not be extended to allow an employee to obtain employment and worker's compensation benefits through misrepresentation. If the consent of one party to a contract would not have been given except for the fraud or misrepresentation of the

other party, the resulting contract may be voided. *Life Benefit, Inc. v. Elfring,* 69 S.D. 85, 7 N.W.2d 133 (1942). This is especially true when the claimant specifically certifies "to the best of my knowledge, the foregoing statements are correct and complete, and may be used to whatever extent necessary in connection with my application for and employment by [the employer]."

■ There was no South Dakota statute specifically addressing this issue at the time of Oesterreich's injury. Nevertheless, a fair interpretation of the public policy embodied in the statutes of this state would not allow an employee to procure employment through artifice when the employee has not fairly represented his physical condition and then permit that employee to receive worker's compensation benefits for a claimed exacerbation of his preexisting physical malady.

Oesterreich argues that SDCL 62–4–37 [1] is limited to employee misconduct causing an injury or death, rather than misconduct in obtaining employment. This interpretation is too limited. In 1991, the legislature "clarified" that this defense should be available for intentional falsification of an employment application. *See* the enacting clause to 1991 South Dakota Session Laws, Chapter 420, § 2 [2] and SDCL 62–4–46.[3] By passing SDCL 62–4–46, the South Dakota Legislature adopted a policy very similar to Professor Larson's three-part test. 1C A. Larson, The Law of Workmen's Compensation § 47.53 (1991). As is evident from its enact-

ing clause, this statute was passed to clarify the existing policy for denying benefits.

■ The primary sources for declarations of public policy in South Dakota are the constitution, statutes, and judicial decisions. *Johnson v. Kreiser's Inc.,* 433 N.W.2d 225, 227 (S.D.1988). As further support for the public policy in this state the circuit court referred to the statutes regulating the Subsequent Injury Fund. SDCL 62–4–34.

■ The Subsequent Injury Fund encourages employers to hire workers with preexisting injuries. The fund does this by reimbursing employers for benefits paid to employees who suffer disabilities that would not have occurred or would not have been as serious if the employee had no preexisting physical impairment when hired. To be eligible for recovery from the fund, an employer must be able to establish by written record that it had knowledge of the preexisting disability at the time of hiring the injured employee. SDCL 62–4–34.3. Consequently, if an employee misrepresents his or her physical condition while applying for employment, the employer would not be eligible for reimbursement from the Subsequent Injury Fund for an injury which is causally related to the preexisting condition.[4]

Hospital argues for the adoption of the three-point test proposed by Professor Arthur Larson in his treatise on worker's com-

---

1. At the time of the alleged injury, SDCL 62–4–37 stated:

    No compensation shall be allowed for any injury or death due to the employee's willful misconduct, including intentional self-inflicted injury, intoxication, or willful failure or refusal to use a safety appliance furnished by the employer, or to perform a duty required by statute. The burden of proof under this section shall be on the defendant employer.

2. The enacting clause states: "An Act to clarify the grounds for denial of worker's compensation benefits."

3. SDCL 62–4–46 provides:

    A false representation as to physical condition or health made by an employee in procuring employment shall preclude the awarding of workers' compensation benefits for an other-

wise compensable injury if it is shown that the employee intentionally and willfully made a false representation as to his physical condition, the employer substantially and justifiably relied on the false representation in the hiring of the employee, and a causal connection existed between the false representation and the injury. The burden is on the employer to prove each of these elements.

4. In determining public policy courts look to other statutes dealing with the same subject matter. The following jurisdictions have adopted this defense by relying on similar worker's compensation provisions. *Jewison v. Frerichs Construction,* 434 N.W.2d 259, 261 (Minn.1989) (citing, *Shippers Transport of Georgia v. Stepp,* 265 Ark. 365, 578 S.W.2d 232 (1979); *Volunteers of America v. Industrial Commission,* 30 Wis.2d 607, 141 N.W.2d 890 (1966); *Air Mod Corp. v. Newton,* 215 A.2d 434 (Del.1965); *Martin Co. v. Carpenter,* 132 So.2d 400 (Fla.1961)).

pensation law. In his treatise, Professor Larson outlines this generally accepted test:

> The following factors must be present before a false statement in an employment application will bar benefits: (1) The employee must have knowingly and willfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and his reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury.

1C A. Larson at § 47.53.

A majority of the states that have considered this issue have judicially recognized intentional misrepresentation to gain employment as an affirmative defense even in the absence of a specific statute. See Shippers Transport of Georgia, 578 S.W.2d at 232; Volunteers of America v. Industrial Commission, 30 Wis.2d 607, 141 N.W.2d 890 (1966); Air Mod Corp., 215 A.2d at 434; Martin Co., 132 So.2d at 400; Shaw's Supermarkets Inc. v. Delgiacco, 410 Mass. 840, 575 N.E.2d 1115 (1991); Jewison, 434 N.W.2d 259; Emerson Elect. Co. v. McLarty, 487 So.2d 228 (Miss.1986); Hilt Truck Lines Inc. v. Jones, 204 Neb. 115, 281 N.W.2d 399 (1979); Sanchez v. Memorial General Hospital, 110 N.M. 683, 798 P.2d 1069 (1990), cert. denied 110 N.M. 653, 798 P.2d 1039 (1990); Givens v. Steel Structures Inc., 279 S.C. 12, 301 S.E.2d 545 (1983); U.S. Fidelity & Guar. Co. v. Edwards, 764 S.W.2d 533 (Tenn.1989); Anderson v. Chattanooga General Services Co., 631 S.W.2d 380 (Tenn.1981); McDaniel v. Colonial Mechanical Corp., 3 Va.App. 408, 350 S.E.2d 225 (1986).

While precedent in this state provides that an employer take an employee as it finds him, Harden v. S.D. Credit Union League, Inc., 87 S.D. 433, 209 N.W.2d 665 (1973); Oviatt v. Oviatt Dairy, Inc., 80 S.D. 83, 119 N.W.2d 649 (1963); Elmstrand v. G & G Rug & Furniture Co., 77 S.D. 152 87 N.W.2d 606 (S.D.1958), none of these decisions dealt with a falsified and incomplete job application. Therefore, they do not provide any guidance on the issue before this court. The Larson test provides a fair and common-sense approach to the problems which occur when an employee willfully misrepresents his pre-employment health condition and subsequently incurs a disability arising out of the prior undisclosed condition. Larson, supra, § 47.-53.

Although SDCL 62–4–46 is very similar to the Larson test, we will restrict our analysis to the Larson test because SDCL 62–4–46 had not been adopted at the time of Oesterreich's injury. Under this test, benefits are barred only if the false representation is knowingly and willingly made, the employer relied on the representation and the reliance was a substantial factor in the hiring, and there must be a causal connection between the false representation and the injury.

Here, Department and the circuit court found that Oesterreich intentionally misrepresented his preexisting back and neck conditions as well as his level of education in order to obtain employment. Oesterreich made this misrepresentation knowing that he would not be hired if he revealed the extent of his problems.

Secondly, although Oesterreich's health history was only one of several factors considered in making the decision to hire him, it is clear that Hospital relied on Oesterreich's false representations when it offered him the position of respiratory therapist. The record shows that, had Hospital known the truth, Oesterreich would not have been hired.

Lastly, the disability for which claimant now seeks benefits clearly arose out of the same condition which he intentionally falsified on his employment application. Medical evidence reveals that Oesterreich's back injuries did not change after the July 28, 1989, lifting incident and his prior injury was the substantial contributing cause of claimant's disability. Oesterreich's current back condition clearly arose from the prior injury which he intentionally misrepresented on his application. The causal connection between Oesterreich's false representation and his injury has been established.

Whether the misconduct or misrepresentation is before or after entering the employee/employer relationship makes no difference because this is the type of conduct which cannot be rewarded through any liberal in-

terpretation of the worker's compensation laws. The circuit court's decision was correct in allowing the misrepresentation defense for the reasons stated herein.

■ Finally, Oesterreich argues that Hospital should be estopped from using this affirmative defense because it learned of Oesterreich's back injury after hiring him but did not immediately terminate him. Neither the Department nor circuit court's decision indicate that this issue was raised prior to this appeal. We refuse to address this issue. This court will not consider issues raised for the first time on appeal. *Hawkins v. Peterson*, 474 N.W.2d 90 (S.D.1991); *Mayrose v. Fendrich*, 347 N.W.2d 585 (S.D.1984); *Jones v. Sully Buttes School*, 340 N.W.2d 697 (S.D. 1983); *Mortweet v. Eliason*, 335 N.W.2d 812 (S.D.1983). Therefore, we affirm the circuit court's decision.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.