132 So.2d 400 (1961)
MARTIN COMPANY and Continental Casualty Company, Petitioners,
v.
Drucella CARPENTER and Florida Industrial Commission, Respondents.
No. 40075.
Supreme Court of Florida.
July 26, 1961.
Rehearing Denied September 13, 1961.
H. Russell Troutman of Akerman, Turnbull, Senterfitt & Eidson, Orlando, for petitioners.
Jack C. Inman of Berson, Barnes & Inman, Orlando, Burnis T. Coleman and Paul E. Speh, Tallahassee, for respondents.
O'CONNELL, Justice.
In this petition for certiorari the employer and its carrier seek review of an order of the Full Industrial Commission which reversed in part and affirmed in part an order of the deputy commissioner in which he denied and dismissed the claim of respondent, Drucella Carpenter.
For some twenty years prior to the date of the alleged accidental injury involved in this cause, claimant had experienced pains in her back. She had on several occasions during those years sought medical treatment for her back condition.
In 1948 she was examined and advised to wear a brace for her back. In 1950, *401 while she was employed in Indiana as a riveter, she suffered with her back and was treated therefor but continued that employment until 1953. Thereafter she worked for another employer doing "bench work" in an industrial plant and again had trouble with her back. She then came to Florida and performed "bench work", but because this job required standing and bending it became "too much" for claimant to the point she "couldn't take it." That employer would not change her to other duties so she quit that job in April 1957.
On October 3, 1957 she went to work for The Martin Company, the employer here involved. She worked at a seated job until May 1958. During this period her back continued to bother her but she lost no time. In May 1958 she was changed from seated work to work at a table, or bench, about waist high. This employment required that claimant stand and also that she bend over the table. She did not protest the change in work assigned to her. She testified that her back began to feel worse, i.e. that the pains in her back became sharper and she had pain in her legs, about an hour after she began her new duties; that two days later she went to the first aid station of the employer, complained of her pains and was given some pills; that she continued working at these duties for about two weeks, at which time she asked to be returned to seated work, which was done.
At this time claimant consulted Dr. Newton C. McCullough, who diagnosed her condition as spondylolisthesis, a congenital condition of the lumbar spine in which there is lack of fusion in posterior parts of a vertebra with bone being replaced by fibrocartilage.
Claimant continued working at her bench and although she received treatment from Dr. McCullough and Dr. Joseph G. Matthews her condition did not improve. Eventually in August 1958, Dr. Matthews performed an operation on claimant, removing a "ball" or mass of cartilage which had formed around one vertebra.
Claimant was given a 90 day leave of absence by the employer. Near the end of this period the employer advised claimant that she must either return to work or be terminated from her employment.
Claimant contacted her doctor who told her she could return to work, which she did. She was assigned duties requiring standing and bending and after two days she contacted her doctor, advising him that she was having leg and back pains. He ultimately advised claimant that she could return to work, but only to perform light assembly work without standing for long periods.
When claimant advised the employer of the restrictions on the work she was permitted to perform she was finally told that the employer "would have to terminate me unless I could do 100 percent of the jobs."
Thereafter on September 8, 1959 claimant filed the claim for compensation and medical benefits here involved. Petitioners controverted the claim and a hearing was held thereon. The claimant testified and produced in her behalf Dr. Bright McConnell, who neither examined nor treated claimant but who did answer hypothetical questions propounded to him. The deputy also had before him the depositions and reports of Drs. McCullough and Matthews.
At this hearing the petitioners introduced in evidence a "Physical Examination Record" dated October 1, 1957. The first portion of this document consists of questions which were answered by the claimant. She then signed that portion of the form certifying that her answers were true. The record shows that when claimant sought employment by the employer she was required to complete this document and submit to what appears to be a cursory physical examination as a condition precedent to employment.
*402 The first question on the form asked if the applicant had ever been subject to various diseases and infirmities including "Back injury or Backache." To this question claimant answered "No."
At the conclusion of the hearing the deputy commissioner stated that he denied the claim on two points: (1) the falsification by the claimant of the "Physical Examination Record" as such pertained to back injury or backache and (2) the claimant suffered no accident.
In his order which followed the hearing, the deputy found the facts to be substantially as set forth above. Among other things he also found, based upon the testimony of Dr. McConnell given in response to a hypothetical question, that "the claimant's pre-existing spondylolisthesis was aggravated by her employment with The Martin Company." He stated that in spite of his finding of aggravation, the work activities in which she was engaged leading to the onset of more severe pain in her back and legs "did not constitute an accident within the meaning contemplated for this term under the Florida Workmen's Compensation law." This statement was followed by "Specifically, I do not consider the activities performed during the period of time on the standing job to have been anything to which the public generally is not ordinarily exposed, and that the fact that she continued on with this work, even after the onset of the increased pain, did not constitute an accident under the * * *" case of Firestone Tire & Rubber Company v. Hudson, Fla.App. 1959, 112 So.2d 29.
In his order the deputy stated that the falsification of the Physical Examination Record was sufficient to overcome the presumption that the employer takes an employee as he finds him.
The deputy thereupon denied and dismissed the claim.
Claimant made application to the Full Commission for review of the deputy's order and the employer-carrier made a cross application for review directed only to the deputy's finding that the claimant's pre-existing condition was aggravated by her employment.
The Full Commission entered its order in which it found that the deputy was correct in finding that claimant's pre-existing condition was aggravated by her employment but reversed the deputy on his finding that this aggravation did not constitute an accident, holding that it did. The Full Commission remanded the cause to the deputy with directions to determine the degree and amount of aggravation.
This petition for certiorari followed.
The employer and carrier assert three questions.
First, they contend that the deputy was correct and the Full Commission in error in reversing the deputy's finding that claimant suffered no accident.
Second, they contend that the claimant is not entitled to workmen's compensation benefits because she misled the employer on a material matter which had a causal relationship to her alleged injury.
Third, they contend that the deputy erred in finding that claimant's pre-existing condition was aggravated by her employment and that the Full Commission likewise erred in sustaining this finding of the deputy.
We shall consider these points in order.
There is no evidence in the record to indicate that the claimant in any way suffered "an unexpected or unusual event or result, happening suddenly" as accident is defined in F.S. § 440.02(19), F.S.A.
Standing and bending over a work bench at a 45 degree angle, as claimant testified she was required to do for an hour before the increased pain in her back and legs began, cannot be classified as an unusual event. Nor did any event occur or the pain begin or happen suddenly. It is not contended that the infirmity of the back, which *403 is the basis of the claimant's pain, happened suddenly. She had suffered with it for more than 20 years.
Nor can it be argued that the pain which claimant suffered was an unexpected or unusual result, happening suddenly. Claimant from many years experience knew that such activity would produce the identical result which her employment brought about. She had been forced to quit her previous employment for such reason.
The deputy made no finding that the claimant suffered any sprain or for that matter any unexpected or unusual event or result, happening suddenly. Claimant suffered no fall, misstep, sudden twisting or wrenching of her back. There was no "breaking, herniating, or letting go, with an obvious sudden mechanical or structural change in the body" as accident is defined in 1 Larson on Workmen's Compensation, Sec. 38.20.
In his order the deputy relied upon the law announced in the Firestone case, supra, a decision which we hereby approve. We think he was correct in doing so and in holding as he did that aggravation in itself will not in a case such as this furnish the necessary "unexpected or unusual event or result, happening suddenly."
The Full Commission in its order distinguished the Firestone case, supra, from the case at bar on the theory that in that case the claimant continued at the usual employment after warning signs of his heart condition, while in the instant case the standing and bending job was not the usual work of the claimant. We think this difference immaterial to the basic question, i.e. whether there was an unexpected or unusual event or result, happening suddenly.
In the Firestone case, the claimant continued in his usual employment after warning signs of a heart condition. He was held precluded from recovery because of his continuing to work in the face of such warnings.
In this case the claimant, knowing from many years experience that standing and bending would aggravate the pain in her back, began the new activity and continued it for two weeks after the onset of the more severe pain. There is even more reason to apply the doctrine of the Firestone case here than in that case.
We have not overlooked the fact that the Full Commission based its decision upon this Court's holding in Czepial v. Krohne Roofing Co., Fla. 1957, 93 So.2d 84. In Firestone and in this case the claimant had a known pre-existing condition and had good reason to know that the work being performed was aggravating such condition, whereas perhaps such was not the case in Czepial. We find the doctrine in Czepial not to be controlling. Rather, the doctrine of Firestone governs this issue and, as already noted, we find the distinction between Firestone and this case to be immaterial.
In City of Tallahassee v. Roberts, 1945, 155 Fla. 815, 21 So.2d 712, a case involving spondylolisthesis, this Court denied a claim for compensation because of lack of proof of "accident" although the onset of pain became severe when claimant, a fireman, jumped out of bed to answer an alarm. In that case the claimant had first had an "aching" in his hip only two days before the alleged accidental injury.
We have researched the cases from all jurisdictions and find no case which holds that mere standing and bending is such a hazard as warrants the benefits of the workmen's compensation act for the results thereof in the absence of an accident.
We must conclude that the deputy was correct in finding that claimant in this case did not suffer an accidental injury to her back and that the Full Commission erred in reversing his order.
The second contention advanced by the employer and carrier is that claimant, because of falsification of the pre-employment questionnaire as to her physical condition, is not entitled to compensation.
*404 The deputy apparently agreed with this contention. The Full Commission did not discuss it in its order reversing the deputy.
Petitioners admit that they have been unable to find any Florida cases on this question. They cite 1 Larson Workmen's Compensation, Sec. 47.53, 58 Am.Jur., Workmen's Compensation, Sec. 335, p. 809, and an annotation in 136 A.L.R. at page 1124 in support of their contention. These authorities state that such false statements will not preclude the employee from receiving workmen's compensation benefits where there is no causal relationship between the falsification and the injury. These authorities imply that the employee will be precluded where there is a causal relationship between the false statements and an injury.
In our research on this question, which has been extensive, we have found only one Florida case which touches the question under discussion.
In Kilgore v. Hudson, 1941, 148 Fla. 580, 4 So.2d 865, this Court reversed a directed verdict in favor of a minor employee on the ground that the contention of the employer-defendant that the employment of the minor had been procured through the fraudulent and unauthorized conduct of his father ought to have been submitted to the jury.
While this case by implication holds that fraud in the procurement of a contract of employment can be held to vitiate the employer-employee relationship and deny the benefits of the employment to the employee, it is not sufficiently pertinent or explicit to be decisive here.
Other jurisdictions however have dealt with the question.
In Minneapolis, St. P. & S.S.M. Ry. Co. v. Rock, 1929, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766, an employee prevailed upon another person to submit in his place to a pre-employment physical examination which he knew he could not pass. The employee was employed and suffered an injury. He brought an action for his injury.
On review the Supreme Court held the employee was an imposter and that even though his physical condition was not the cause of his injuries it did have a direct relation to the propriety of admitting him to the employment.
The court said, at 279 U.S. at page 415, 49 S.Ct. at page 365:
"* * * It was at all times his [the employee's] duty to disclose his identity and physical condition to [the] petitioner. His failure so to do was a continuing wrong in the nature of a cheat. The misrepresentation and injury may not be regarded as unrelated contemporary facts. As a result of his concealment his status was at all times wrongful, a fraud upon petitioner, and a peril to its patrons and its other employees. Right to recover may not justly or reasonably be rested on a foundation so abhorrent to public policy. * * *"
We hereby approve this statement.
In the Rock case it would appear that the court held that the fraud of the employee went to the factum of employment contract and was, therefore, such as to vitiate the employment relationship making it unnecessary to determine that there was a causal relationship between the misrepresented physical condition of the employee and the injury which was the source of the complaint. Other cases are of like import.
In Fort Worth & D.C. Ry. Co. v. Griffith, Tex.Civ.App. 1930, 27 S.W.2d 351, the employee in applying for job of switchman withheld the fact that he was color blind. The court denied recovery to the injured employee saying there was a lack of mutuality and the minds of the parties never met.
In Clark v. Union Pac. R. Co., 1949, 70 Idaho 70, 211 P.2d 402, the employee withheld the fact that he was afflicted with epilepsy. The court held that the question *405 whether his false or deceptive statement affected the factum of contract should have been submitted to the jury.
However, where the misrepresentation, or fraud, is not such as to vitiate the entire contract the cases hold that the employment contract is not vitiated and that the employee is denied recovery for compensable injuries only where the misrepresented physical condition is causally related to the injury.
In Talarowski v. Pennsylvania R. Co., D.C.Del. 1955, 135 F. Supp. 503, an F.E.L.A. case, the court denied a motion of the plaintiff to strike an affirmative defense of the defendant railroad which defense of the defendant alleged that the plaintiff in his application for employment falsified his physical condition, the said falsifications were relied upon by the defendant's examining physician, and that had the defendant known of plaintiff's true condition it would not have employed him.
In denying the motion to strike the court said, at 135 F. Supp. at page 504:
"An employee is not entitled to maintain a suit under the provisions of Federal Employers' Liability Act if his employment is procured by reason of fraudulent statements made in his application for employment, if said fraudulent statements are relied upon and are of such a character as to have been a substantial factor in the hiring. * * *"
In Southern Pac. Co. v. Libbey, 9 Cir., 1952, 199 F.2d 341, an injured student fireman sought damages. The company alleged fraud in that the student on employment application forms stated he had never been injured, never received pension or disability benefits from the government, and had never been confined to a hospital for surgical operation following injury. The record showed the employee had been injured in World War II and discharged with a 70% disability rating, which had been reduced to 10% and which he was receiving at the time he applied for employment. He had later suffered two other fractures and been hospitalized in each case.
The trial court refused to allow evidence of the examining doctor to show that he would not have passed the employee had he known his true medical history and that one with such a history would not meet the physical standards for student firemen and for a fireman.
The appellate court reversed saying that the evidence should have been allowed since the jury might well have found a causal relation between the fraud and the injury suffered by the employee.
In Long v. Big Horn Const. Co., 1956, 75 Wyo. 276, 295 P.2d 750, the injured employee falsely represented his age as being 62 when he was in fact 70 years old. The defendant company claimed there was a causal relation between the employee's advanced age and the injury and between the advanced age and the permanent ill effects of the injury. The lower court agreed with the defendant company.
The appellate court reversed holding that the relationship between the employee's age and the results of the injury was not significant and that it had not been shown by competent evidence that there was a causal relationship between the employee's age and the injury.
The appellate court indicated clearly that had the causal relationship between the injury and the false representation been established its decision would have been otherwise, saying at 295 P.2d at page 752:
"* * * most jurisdictions have adopted the rule of law that employment induced by false or fraudulent representations, not going to the factum of the contract, is voidable and not void and, therefore, the relationship of employer and employee exists and compensation will be allowed for injuries sustained during such employment unless there is a causal connection between *406 the injury and the misrepresentation. * * *" (Emphasis added.)
Our Workmen's Compensation Act is silent on the effect of false representations on the status of the employee in cases such as this, but it does speak on the effect of such representations as to pre-existing occupational diseases.
Sec. 440.151(1) (b), F.S.A. provides that no compensation shall be paid for an occupational disease if the employee, at the time of entering into the employment, falsely represents in writing that he has not been previously "disabled, laid off or compensated in damages or otherwise, because of such disease."
While we are not concerned here with an occupational disease the provisions of this section demonstrate a legislative determination that an employee who misrepresents in writing a fact material to a subsequent claim for compensation shall be precluded from the benefits of the Act.
There are at least two sound reasons for such a policy.
First, this Court, and others, have in construing the Act determined that there is a presumption that the "employer takes the employee as he finds him." Davis v. Artley Const. Co., 1944, 154 Fla. 481, 18 So.2d 255, and Borden's Dairy v. Zanders, Fla. 1949, 42 So.2d 539.
Except as limited by Sec. 440.151(1) (b) and Sec. 440.02(19) F.S.A. this presumption makes the employer responsible for compensation benefits to an employee who at the time of employment suffered a disease or bodily infirmity which is accelerated or aggravated by a compensable injury. In other words the presumption places on the employer the risks attendant upon hiring an infirm employee.
This presumption makes it wise that an employer determine before employment what state of health an employee enjoys in order to avoid the risks which are resultant from hiring an infirm employee. We do not think the misrepresentations of an employee should be allowed to defeat the efforts of the employer to protect himself from this presumption and the assumed risks.
Second, by Sec. 440.15(5) F.S.A. our legislature, in an effort to encourage the employment of those afflicted or disabled in some way, has created a special disability, or second injury, fund which allows an employer to be reimbursed for compensation paid an employee for disability due to a pre-existing condition. To have resort to this fund, however, the employer probably must either have had knowledge of the pre-existing condition when he hired the employee, or have continued the employment after obtaining knowledge thereof.
Thus, an employee who misrepresents a condition which is causally related to a subsequent claim for benefits not only robs the employer of making a choice as to whether he will or will not hire the employee with the risks attendant thereon, but also denies the employer resort to the special disability fund.
We therefore adopt the rule that a false representation as to physical condition or health made by an employee in procuring employment will preclude the benefits of the Workmen's Compensation Act for an otherwise compensable injury if there is shown to be a causal relationship between the injury and the false representation and if it is also shown that (1) the employee knew the representation to be false, (2) the employer relied upon the false representation and (3) such reliance resulted in consequent injury to the employer.
In the case before us there can be no doubt that the misrepresentation of the claimant, while not going to the factum of the employment contract, was false and had a direct causal relationship to the condition for which she seeks compensation.
It is equally clear that claimant knew the representation to be false.
*407 However, the record before us contains no evidence to prove that the employer relied on the false representation in employing claimant. Further, while it is obvious that the employer would be injured if it had to pay compensation benefits it is not shown that it would not have hired claimant had she correctly represented her back condition. Therefore, it is not shown that the employer was necessarily injured by the false representation.
These missing factors could easily be proved, if they exist in fact. If our determination of the first question were not favorable to the employer-carrier we would remand the cause for taking of proof on these questions.
The last point raised by the employer-carrier is easily disposed of.
The deputy held that claimant's employment aggravated her back condition but also held that she was not entitled to compensation.
We see no inconsistency in this holding in view of the fact that the deputy also found that the claimant did not suffer an accidental injury.
As we view the statute it is not every aggravation of a pre-existing condition which is compensable. In the case of aggravation of occupational diseases no accidental injury is required for because of the nature of such diseases the aggravation constitutes the accident or the injury. Aggravation of other conditions of the body to be compensable must be the result of an accidental injury and the aggravation cannot constitute the accident.
For the reasons above expressed the writ of certiorari is granted, the order of the full commission is quashed with directions to reinstate the order of the deputy commissioner.
It is so ordered.
ROBERTS, C.J., and THOMAS, DREW and THORNAL, JJ., concur.