PER CURIAM.
The City of Winter Springs (the City) and its carrier appeal an order of the judge of industrial claims finding that claimant suffered a second and new injury in March 1977 entitling him to temporary total disability benefits and medical benefits from claimant’s second employer, the City. As to Point I, we find there is not substantial, competent evidence to support the finding that there was a new injury. Since Point I is dispositive of the issues raised by appellants, we do not discuss the other points raised.
Claimant suffered his first compensable accident in November 1975 while working for United Accoustical and Roofing Company, Inc. (United). At that time he sustained a laceration to the lower hip and a chest wall contusion. Approximately a month later a diagnosis was made of a chest contusion, a sprain of the lumbar area and cervical spine with pain radiating from the back down to the legs, and a mild concussion. The family doctor, Dr. Guzman, opined that the injury of March 1977 was an aggravation of the November 1975 accident. His testimony shows that from November 1975 until October 1976, Lane visited the doctor regularly, complaining of back and chest pain. On one occasion Lane bent over and couldn’t straighten up. On another occasion, May 1976, Lane reportedly re-hurt his upper back while working. On these visits the doctor often noted muscle spasm, but otherwise found no other objective findings. In January 1977 Lane went to work for the City. In February 1977, during Lane’s last visit before the March incident, he was told by Guzman that he’d reached maximum medical improvement and would have back pain off and on for the rest of his life. On March 15, 1977, Lane was treated for chest pains and anxiety hyperventilation. On March 21, 1977, Lane stated he had rehurt his back while picking up concrete slabs. Dr. Guzman told Lane he had just aggravated his old injury. Muscle spasm was again noted and Lane was given a corset to wear. Dr. Reckles, an orthopedic surgeon, saw claimant in Octo *803 ber 1977 for evaluation pursuant to request of counsel and opined that the second injury was an exacerbation of the first injury.
Dr. Blumen, an orthopedic surgeon, saw Lane in April 1977 when he was hospitalized after the second injury. The history recited by Lane to Blumen reveals that Lane dated his injury to the November 1975 accident but that he returned to work with the City in January 1977. He worked without significant complaints until the shoveling incident. Lane reported that he experienced a tearing type of pain in his lower back and was not able to straighten up and that the pain persisted. He began having radiating pain to the lower right extremity, leading to the April 1977 hospitalization. Dr. Blumen was of the opinion that the vast majority of complaints were secondary to the accident of 1977, although he admitted there may have been some element of preexisting or contributing reason for the current complaints. In response to a question concerning whether the 1977 accident was new or a symptomatic worsening, Dr. Blumen testified that the history given to him and the symptoms described by Lane were compatible with an injury to the lower back in March 1977. None of Dr. Blumen’s examinations revealed muscle spasm. Dr. Urbach, an orthopedic surgeon practicing with Dr. Blumen, found no evidence of muscle spasm in his August 1976 examination.
Lane’s testimony was to the effect that when he went to work for the City he was in “pretty good shape.” But admittedly, he was not totally back to normal. For example, there were days he couldn’t stand to ride in a truck and he would lie down on the seat. He took pain pills and muscle relaxants, thus performing the same work as his co-workers. His supervisor corroborated his frequent complaints of continuing back problems. In early April 1977, or about that time, he was working on Fruitwood Avenue picking up concrete sections of a bridge that had been tom out. He went to pick up the slabs, bent over, and his back “went to catch and I couldn’t pick it up.” His back kept “catching” and it took him twice the normal time to pick up the slabs and load them onto the truck. He finished his job, and drove the truck, but later, his back hurt so badly that he told another worker to drive. He stated that in this second injury, the pain went up through his ribs whereas before it had gone down to his legs. He described the sensation as similar to the pains he had experienced before except that it was more up his back and now his back “would give” on him.
In addition to the conflicting medical opinions as to whether there was an aggravation or a new accident, Lane’s account of the facts as revealed in his depositions, at the hearing, and in histories given to the various doctors, leads to the inevitable conclusion that Lane was never fully recovered from his prior back injury but experienced back discomfort up to the time of the shoveling accident. Furthermore, the pain he experienced, although somewhat different, was similar to the pain he had experienced before. See Richard Perron Construction Co. v. Neiswonger, IRC Order 2-3417 (April 27, 1978), cert. denied, Cox Lumber Co. v. Neiswonger, 368 So.2d 1364 (Fla.1979) (no new accident where pain experienced was the same pain experienced numerous times before). It is apparent that the shoveling incident was not a new accident. There was no evidence showing that there was “an unexpected or unusual event or result, happening suddenly.” Martin Company v. Carpenter, 132 So.2d 400 (Fla.1961); Richard Perron Construction Co., supra. It is clear Lane had experienced similar pain in the past while performing his work. Also, there was no immediate incapacitating pain; rather, the pain gradually worsened throughout the afternoon until he finished his job, whereupon he told another worker to drive the truck. Contrast Overholser Construction Co. v. Porter, 173 So.2d 697 (Fla.1964), where the evidence supporting the finding of a new accident included immediate back pain which was so severe that the claimant had to cease working and involved a part of the anatomy different from that involved in the first accident.
Accordingly, under the facts of this case, we hold that there is not substantial, com *804 petent evidence consistent with reason and logic, as urged in Point I of appellants’ brief, to support the finding of a new accident. Thus, we reverse the order as to all parties and remand the cause with instructions for entry of a new order based upon new findings supported by the existing record and consistent with this opinion.[1]
MILLS, C. J., and McCORD, J., concur.
BOOTH, J., dissents with opinion.

. We do not think it was necessary for appellee Lane to file a cross-appeal against United to preserve a possible right of compensation against United and its carrier. From all that appears, United’s dismissal from the suit was dependent upon a finding that the City was liable for the claim. Injustice might result if we granted a reversal as to less than all parties. See generally General Portland Land Development Company v. Stevens, 356 So.2d 840 (Fla. 4th DCA 1978); 5B CJS Appeal and Error § 1919 (1958).