625 So.2d 895 (1993)
William ADAMS, Appellant,
v.
PRESTRESSED SYSTEMS INDUSTRIES and Liberty Mutual Insurance Company, Appellees.
No. 91-3830.
District Court of Appeal of Florida, First District.
October 12, 1993.
*896 James D. DiLorenzo of Sims & DiLorenzo, Ocala, Joseph C. Segor, Miami, for appellant.
Mark A. Massey of Daniel L. Hightower, P.A., Ocala, for appellees.
ERVIN, Judge.
Claimant, William Adams, appeals an order of the judge of compensation claims (JCC) denying his claim for workers' compensation benefits under the bar established in Martin Co. v. Carpenter, 132 So.2d 400 (Fla. 1961). We reverse and remand for further proceedings.
In 1985, the 32-year-old claimant injured his lower back while working for a previous employer. He received workers' compensation benefits for two and one-half years, and then settled his claim for $19,500. He was hospitalized three different times for low back strain between January 26, 1987 and July 23, 1989.
On September 29, 1989, Adams applied for work as a carpenter with the employer, Pre-stressed Systems Industries (PSI), and was given an employment application. Because Adams could barely read or write, he was assisted by a PSI employee who read the questions to him and set down his answers. The pertinent questions, answered or unanswered by Adams, were as follows:

Have you ever injured or sprained your back? Yes ____ No ____
If yes, did it happen on the job? Yes ____ No ____
 off the job? Yes ____ No ____
Did you receive treatment from a doctor? Yes ____ No ____
If yes, give the physician's name and address: _____________________________
----------------------------------------------------------------------------
Do you presently suffer from any aches or pains of
the back? Yes ____ No x 
Do you have any physical disabilities or handicaps? Yes ____ No x 
Are you fully recovered from previous injuries or sickness
 you may have had? Yes ____ No x 
Have you ever received any benefits or a disability under
 the Workers' Compensation Act of Florida? Yes ____ No ____
Any other state? Yes ____ No ____

Louise Jackson, an insurance clerk for PSI, testified that if an applicant indicates a prior injury on an application form, the company has a policy of inquiring further, particularly in the case of back injuries, because construction work requires a certain amount of heavy labor. Without inquiring about the omissions in the application, the foreman immediately put Adams to work as a carpenter. On October 2, 1989, while he was working on a ladder during a rainstorm, claimant fell, landing on the right side of his neck and head. He was treated first by Dr. R. Patrick Jacob, a neurosurgeon in Ocala, and then by Dr. E. Jacob, another neurologist, when Adams moved to Marianna.
In his final order, the JCC held that the claim was barred under Martin v. Carpenter, finding that Adams knowingly misrepresented his physical condition to the employer when he was hired; and that the employer detrimentally relied on the misrepresentation, based on Louise Jackson's testimony that the employer would have investigated further had claimant affirmatively answered the questions about back injuries in the application, and, upon ascertaining accurate information regarding claimant's condition, would not have hired him. The JCC further *897 found that claimant's neck injury was causally related to the prior back injury, using the following reasoning: That Dr. E. Jacob, after diagnosing claimant as suffering from muscle-tension headaches with vascular features and anxiety state, assigned claimant a four percent permanent impairment (PI) rating as a result of his neck injury and related it to the October 2, 1989 accident. Because Adams sustained PIs to his neck and his lower back caused by the injuries in 1985 and 1989, respectively, claimant had a greater overall impairment and disability after the 1989 neck injury than he had suffered from the 1985 injury alone. The JCC reasoned that if the employer had known of the 1985 back injury, it could have applied to the Special Disability Trust Fund for reimbursement of excess benefits paid. Therefore, because the causal connection was established for Trust Fund purposes, a medical causal connection was also established under Martin v. Carpenter.
Although it is questionable whether appellant's failure to answer some of the inquiries on the application constituted affirmative misrepresentations, we do not decide that question because there clearly was no competent, substantial evidence (CSE) supporting the JCC's findings of employer reliance and medical causation.
Turning first to the reliance finding, it is axiomatic that the conclusion of a JCC will not be disturbed if the evidence it is based upon "is competent and substantial and comports with reason and logic." Crowell v. Messana Contractors, 180 So.2d 329 (Fla. 1965). The JCC's finding of reliance based upon the facts of this case does not comport with reason and logic. When faced with numerous unanswered yet supposedly critical questions, the employer could not turn a blind eye to these omissions and then claim reliance on the few questions that were answered in the negative, particularly when one answer admitted a previous injury or sickness.
In the civil context, a party who relies on a misrepresentation must show that it exercised some diligence in investigating the misrepresentation, unless it is shown that the fraudulent party had exclusive or superior knowledge, or prevented further investigation. Ramel v. Chasebrook Constr. Co., 135 So.2d 876 (Fla. 2d DCA 1961); Nessim v. DeLoache, 384 So.2d 1341 (Fla. 3d DCA 1980). The due diligence standard is expressed in the following terms:
The right to rely on a representation is closely related to the duty of the representee to use some measure of precaution to safeguard his own interest. In cases of this kind, assuming that the parties are not dealing in some fiduciary or confidential relation, the principle that the representee must exercise reasonable effort or diligence for his own protection will usually be applied, both in law and in equity.
27 Fla.Jur.2d Fraud & Deceit § 52 (1981) (footnotes omitted). Jackson's testimony was insufficient to establish employer reliance under the facts of this case.
Unlike the employers in Kalbes v. Armour Industrial Security, 483 So.2d 124 (Fla. 1st DCA 1986), and Colonial Care Nursing Home v. Norton, 566 So.2d 44 (Fla. 1st DCA 1990), PSI was not lulled into complacency by false statements denying the existence of any prior injury. PSI should have inquired further once Adams left unanswered the questions regarding previous back injuries. Its failure to make any such reasonable inquiry undermines Jackson's testimony that the company was particularly concerned about back injuries because of the heavy labor involved in construction work. The evidence before the JCC did not provide a substantial basis of fact from which reliance could be reasonably inferred. DeGroot v. Sheffield, 95 So.2d 912, 916 (Fla. 1957) (en banc).
In addition, there is no CSE for the JCC's finding of causation in the record on appeal. The E/C was required to show that there was a causal relationship between the injury and Adams's false representation, meaning a medical relationship between his current neck injury and the undisclosed prior back injury. Colonial Care Nursing Home, 566 So.2d at 45; Kalbes, 483 So.2d at 125. Rather than finding a medical relationship between Adams's present neck injury and the undisclosed prior back condition, the JCC concluded that causation is established after an employer shows it was denied the opportunity to recover excess benefits from the *898 Special Disability Trust Fund. The JCC, however, made no finding that claimant sustained a PI from his previous back injury; his conclusion that Adams had an earlier PI is based upon the deposition testimony of Dr. E. Jacob, which was neither submitted into evidence nor included in the record on appeal. Nor did the JCC determine that there was a merger[1] of the two disabilities. The JCC's order implies that if claimant had, for example, a four percent PI from his back injury, and a four percent PI from his current neck injury, his resulting eight percent overall PI could establish the employer's entitlement to Special Disability Trust Fund reimbursement. It would not, without a finding of merger. The JCC's theory of "causal connection for Trust Fund purposes" has no record support; nor does it comport with the requirement of medical causation in Martin v. Carpenter.
Because the JCC erred in applying Martin v. Carpenter to these facts, and because he made no findings as to claimant's entitlement to benefits if the defense were not to apply, we reverse and remand with directions to the JCC to determine all remaining issues ripe for consideration.
REVERSED and REMANDED.
JOANOS and WOLF, JJ., concur.
NOTES
[1] "Merger," under Section 440.49(2)(b)(2), Florida Statutes (1989), means that the subsequent accident would not have occurred but for the existence of the previous PI, or that the PI resulting from the second accident is materially and substantially greater than that which would have resulted had the previous PI not existed.