VAN NORTWICK, J.
In this workers’ compensation appeal, Shiwana J. Irving seeks reversal of an order of the Judge of Compensation Claims (JCC) which, primarily on the authority of Martin Co. v. Carpenter, 132 So.2d 400 (Fla.1961), denied Irving’s claim for indemnity and medical treatment on the ground that she had not been truthful regarding her medical history at the time she was hired. Irving argues that Martin has been overruled by the adoption of section 440.15(5)(a), Florida Statutes (1993); and,- alternatively, that, even if Martin has not been overruled, Martin should not serve as a bar to her claim, since there is no “causal relationship” shown between the prior medical condition that she failed to disclose in a preemployment questionnaire and the workplace. injury which: is the subject of the instant proceeding. Because we agree with the JCC that the Martin rule remains viable and we find competent substantial evidence to support the JCC’s finding that such a causal relationship did exist, we affirm.

Factual Background and Procedural History

Prior to employing Irving to work as an assembler, appellee Ametek, Inc., the employer, required Irving to answer a questionnaire regarding her medical history and to submit to a physical. Among other things, the questionnaire asked: “Do you now have or have you ever had any of the following: ... arm, hand or shoulder trouble.” If an applicant answered yes, the applicant was to provide additional information, such as -the date: of injury, name of the treating physician and hospital. Irving answered “no” to this question. The questionnaire further asked: “Have you ever had an injury on the job (worker’s compensation) that required treatment/medical care by a doctor?” Claimant again answered in the negative.
On November 18, 1995, on her third day of work, Irving reported to Ametek’s occupational nurse that she was experiencing pain in her right shoulder. A notice of injury was filed, and Irving was referred to her personal physician. She never returned to work. On February 19, 1997, she filed a petition for temporary total disability (TTD) benefits and temporary partial disability (TPD) benefits, impairment benefits as of the date of maximum medical improvement, and medical treatment. By that time, Irving had been examined by Paul Dell, M.D., who diagnosed impingement syndrome, and Robert Martinez, M.D., who diagnosed an inflamed tendon in the right shoulder.
As a defense, Ametek and National Union Fire (jointly the employer/carrier) alleged that Irving misrepresented her medical history and that the employer detrimentally relied on that misrepresentation. In support of such defense, Marc Newquist, M.D., testified that, in September 1994, before Irving’s employment at Ametek, Irving presented to a hospital emergency room for which he was on call and complained of right shoulder pain which occurred as she was packing and moving boxes at work. Dr. Newquist diagnosed muscle strain due to overuse.
At the hearing on her claim for workers’ compensation benefits, Irving testified that she was confused by certain questions on the employer’s questionnaire and that she circled those questions, including the questions related to her prior medical history quoted above. The original questionnaire completed by Irving was introduced into evidence, and it contained no circled questions. Further, the occupational nurse who was present while Irving completed the questionnaire testified that Irving did *1047 not ask any questions about the questionnaire.
The JCC denied the claim in its entirety on the authority of section 440.15(5)(a), Florida Statutes (1993), and Martin, supra. In denying the claim, the JCC found that Irving had knowingly misrepresented herself, that the employer relied on that misrepresentation to its detriment, and that the prior undisclosed shoulder injury was causally related to the 1995 workplace injury.

Martin Co. v. Carpenter

In Martin, supra, the claimant had experienced back pain for approximately 20 years prior to her employment by the Martin Company, and sought medical treatment for her back condition on several occasions during those years. As a condition of her employment by the Martin Company, claimant was required to complete a questionnaire which asked if she had ever been subject to various diseases, including back injury or backache. To this question, claimant answered “no.” Martin, 132 So.2d at 401. Approximately seven months after beginning work for the Martin Company, following a change from seated work to employment requiring standing and bending over a table, claimant complained of increased back pain. She received treatment at the company’s first aid station and, later, by a physician. Claimant was then placed on a 90-day leave of absence because of her back condition and approximately 23 months after her initial employment by the Martin Company, she filed a claim for workers’ compensation and medical benefits. Id.
In Martin, in considering whether the claimant was precluded from receiving benefits because she had misrepresented her physical condition to her employer, the Supreme Court noted that the applicable Workers’ Compensation Act “was silent on the effect of false representations on the status of the employee in cases like this....” Id. at 406. Nevertheless, the court reasoned that the provisions of section 440.151(b), which precluded payment of benefits to employees who falsely represent in writing that the employee had not previously been disabled or compensated due to an occupational disease,
demonstrate a legislative determination that an employee who misrepresents in writing a fact material to a subsequent claim for compensation shall be precluded from the benefits of the Act.
Id. at 406. As a result, in furtherance of this legislative intent, the Martin court held as follows:
We therefore adopt the rule that a false representation as to a physical condition or health made by an employee in procuring employment will preclude the benefits of the Workmen’s Compensation Act for an otherwise compensable injury if there is shown to be a causal relationship between the injury and the false representation and if it is shown that (1) the employee knew the representation to be false, (2) the employer relied upon the false representation and (3) such reliance resulted in consequent injury to the employer.

Id.

As this court explained in Colonial Care Nursing Home v. Norton, 566 So.2d 44, 45-6 (Fla. 1st DCA 1990), an employee who has misrepresented a condition which is causally related to a subsequent claim for benefits has denied the employer the opportunity of making a choice as to whether or not to hire that particular employee notwithstanding the attendant risks. Martin does not, however, require a potential employee “to make a full, not specifically solicited, disclosure of all of his particular shortcomings,” Simmons v. Trinity Indus., 528 So.2d 1337, 1339 (Fla. 1st DCA 1988), or create a defense when the employer asks only “nonspecific broad questions as to physical condition on employment applications,” id. at 1339-40. It is undisputed in the instant case that the employer’s questionnaire included questions directed to specific physical conditions.

*1048
Section U0.15(5)(a)

Section 440.15(5)(a), Florida Statutes (1993) provides:
The fact that an employee has suffered previous disability, impairment, anomaly, or disease, or received compensation therefor, shall not preclude him from benefits for a subsequent aggravation or acceleration of the preexisting condition nor preclude benefits for death resulting there from, except that no benefits shall be payable if the employee, at the■ time of entering into the employment of the employer by whom the benefits would otherwise be payable, falsely represents himself in writing as not having previously been disabled or compensated because of such previous disability, impairment, anomaly, or disease and the employer detrimentally relies on the misrepresentation:
(Emphasis added).
Irving argues that this statute has superceded the rule in Martin and that a party can be denied benefits pursuant to section 440.15(5)(a) only if she was previously “disabled or compensated” and falsely represents that fact in writing. Since Irving was neither previously disabled nor compensated by her shoulder condition, she argues her claim was wrongly denied under the statute. Irving reasons that the legislature’s decision to allow a misrepresentation defense only in cases where the claimant has experienced a disability or has received compensation is a logical one, because only prior medical conditions which have been significant enough to have warranted compensation or have caused a disability would have an effect on future performance in the workplace. She submits that an employee who seeks worker’s compensation benefits should not be punished because that employee failed to report insignificant aspects, of their medical history.
We agree that-section 440.15(5)(a) would not bar Irving’s claim, because the record contains no evidence that she was disabled or received compensation as a result of her shoulder injury in 1994. Nevertheless, we find Irving’s argument to be without merit. Section 440.15(5)(a) was enacted by chapter 90-201, Laws of Florida. Neither the preamble to the chapter law or the final staff analysis and economic impact statement prepared for the Florida House of Representatives, Committee on Commerce, refers to Martin. In addition, the Martin rule has been recently cited without any suggestion -that its validity was impacted by the adoption of chapter 90-201. See, e.g., Winn Dixie v. Teneyck, 656 So.2d 1348 (Fla. 1st DCA 1995); Walters v. Keebler Co., 652 So.2d 976 (Fla. 1st DCA 1995); Landers v. Medical Personnel Pool of North Central Fla., 647 So.2d 173 (Fla. 1st DCA 1994); and Adams v. Prestressed Sys. Indus., 625 So.2d 895 (Fla. 1st DCA 1993). Further, and more significantly, the workers’ compensation law in effect when Martin was decided included in section 440.151(b) a statutory provision substantially similar to section 440.15(5)(a), from which statute the Martin court gleaned the legislative intent on which to base its holding. Martin, 132 So.2d at 406. Thus, we find no basis to conclude that the- adoption of section 440.15(5)(a) was intended to overrule Martin.

Causal Relationship Between Injury and False Representation

To preclude a workers’ compensation claim under the Martin defense, a “causal relationship” must exist between the misrepresentation and the injury which is the subject of a present claim. Martin, 132 So.2d at 406. Irving argues, in the alternative, that, assuming the Martin defense remains viable, there is no causal connection between her prior shoulder condition and the instant workplace injury.
A causal relationship for purposes of Martin is shown by evidence of a “medical relationship” between the workplace injury at issue and the undisclosed prior injury or condition, or by evidence that the prior injury or condition contributed to or was aggravated by the subsequent injury. Craig v. Gray’s Guard Serv., 582 So.2d 35, 36 (Fla. 1st DCA 1991); see also Colonial *1049 Care Nursing Home v. Norton, 566 So.2d 44, 45 (Fla. 1st DCA 1990), Cycenas v. Sarasota Coca Cola Bottling Co., 440 So.2d 39, 40 (Fla. 1st DCA 1983), and Higgins v. Trigil Repair, Inc., 436 So.2d 222 (Fla. 1st DCA 1983). Here, the JCC expressly found such a causal relationship did exist. We find competent substantial evidence in the medical evidence in the record to support a finding that Irving’s prior shoulder problems, which she failed to disclose, were substantially the same as her 1995 workplace injury. The similarity of the shoulder problems is clearly shown by a comparison of the testimony of the emergency room physician who examined her right shoulder in 1994 with the testimony of the physician who performed an IME in 1997. Both in 1994, when she was treated for shoulder pain, and at the time of her 1997 IME following her 1995 workplace injury, she complained of pain starting in her right shoulder and radiating down her arm. The emergency room physician who treated Irving in 1994 testified that Irving experienced generalized pain over her right shoulder and down into her arm. Similarly, Dr. Dell testified that in the 1997 IME Irving complained of tenderness over the anterior aspect of the right shoulder radiating into the anterior of the del-toid and biceps muscles of her arm. Dr. Dell also explained that it was “unusual” to show “symptoms of a repetitive motion injury after two days of working on the job.” Further, when he was asked to assume that Irving had presented to an emergency room in 1994 with pain and muscle strain to her right shoulder, Dr. Dell testified that the workplace injury could be a “reexacerbation” of her previous shoulder condition. We therefore find a sufficient basis in the record for affirming the JCC’s finding of a causal connection between the undisclosed prior condition and the workplace injury which is the subject of this proceeding. See Craig v. Gray’s Guard Serv., 582 So.2d at 36.
We have considered the remaining issues raised on appeal and find them to be without merit. Accordingly, the order under review is AFFIRMED.
PADOVANO, J., CONCURS and BENTON, J., DISSENTS WITH WRITTEN OPINION.