BENTON, J.,
dissenting.
I respectfully dissent on two bases: First, the defense formerly available under Martin Company v. Carpenter, 132 So.2d 400 (Fla.1961), has been statutorily restricted to cases involving previous disability or compensation for “previous disability, impairment, anomaly, or disease.” § 440.15(5)(a), Fla. Stat. (1995). Since, as the majority opinion notes, ante at 1048, Ms. Irving was neither disabled by nor compensated for what the physician who treated her on September. 1, 1994, diagnosed as “a self-limiting [muscle strain] that she would recover from completely,” her subsequent employer, who hired her more than a year later, should not be able to avoid an adjudication on the merits of the present claim. Second, the subsequent employer, Ametek, Inc., and its insurance carrier, National Union Fire Insurance Company, failed to establish a causal connection even between Ms. Irving’s muscle strain and the present work-related injury to her rotator cuff tendon.
I.
Since July 1, 1990, section 440.15(5)(a), Florida Statutes, created by chapter 90-201, section 20, Laws of Florida, has provided:
The fact that an employee has suffered previous disability, impairment, anomaly, or disease, or received compensation therefor, shall not preclude him from benefits for a subsequent aggravation or acceleration of the preexisting condition nor preclude benefits for death resulting therefrom,- except that no benefits shall be payable if the employee, at the time of entering into the employment of the employer by whom the benefits would otherwise be payable, falsely represents himself in writing as not having previously been disabled or compensated because of such previous disability, impairment, anomaly, or dis *1050 ease and the employer detrimentally relies on the misrepresentation.
(Emphasis supplied.) The statute does not preclude benefits just because an employee falsely represents some aspect of his or her medical history.
Three decades earlier, before the Legislature had enacted a statute on the subject, the Florida Supreme Court, in deciding Martin Company v. Carpenter, 132 So.2d 400 (Fla.1961), crafted what it deemed to be a reasonable rule designed to further a perceived legislative policy to deny benefits where an employee had obtained employment by making false representation of material facts. In enacting section 440.15(5)(a), the Legislature has clearly spoken on the issue, however, and laid down its own rule, occupying a field no court has ever suggested was not rightfully the Legislature’s own. See Travelers Ins. Co. v. Sitko, 496 So.2d 920, 921 (Fla. 1st DCA 1986) (“[Wjorkers’ compensation is purely a creature of statute. All rights and liabilities under the system are created by chapter 440, Florida Statutes, as is the deputy’s power to hear and determine issues in a workers’ compensation case.”).
In combining sections 440.15(5)(a) and 440.151(l)(b), see Ch. 90-201, § 20, Laws of Fla., the Legislature significantly changed statutory language, and is therefore presumed to have, changed the meaning of the statute. See Sam’s Club v. Bair, 678 So.2d 902, 903 (Fla. 1st DCA 1996); Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996). Rather than leaving in place the rule of Martin Company, the Legislature made a statutory change that substantially narrowed the exclusion from coverage. Cf. Nicoll v. Baker, 668 So.2d 989, 990-91 (Fla.1996) (holding amendment to URESA effected legislative abrogation of prior case law); Perkins v. State, 682 So.2d 1083, 1084-85 (Fla.1996) (holding statutory definition of burglary superseded common law definition); Baker v. State, 636 So.2d 1342, 1344 (Fla.1994) (same); Kilpatrick v. Sklar, 548 So.2d 215, 218 (Fla.1989) (holding common law defense unavailable under statute on the same subject).
In the absence of any contrary legislative history or other indication, the presumption is that the Legislature intended to change the law by amending the statute. See Sam’s Club, 678 So.2d at 903 (“Certainly, by enacting a material amendment to a statute, the legislature is presumed to have intended to alter the law unless the contrary is made clear.”); Mangold, 675 So.2d at 642 (“When the Legislature makes a substantial and material change in the language of a statute, it is presumed to have intended some specific objective or alteration of law, unless a contrary indication is clear.”). Here the Legislature has distinguished between prior disabilities and less significant conditions for which no compensation was paid. Essentially, section 440.15(5)(a) codifies the Martin Company defense, but restricts it to those cases where the claimant misrepresented a prior disability or concealed the receipt of compensation for a previous condition.
The Martin Company defense still applies in cases where the industrial accident occurred before July 1, 1990. See Adams v. Prestressed Sys. Indus., 625 So.2d 895, 896 (Fla. 1st DCA 1993). The other cases on which the majority opinion relies do not specify the dates of accident. See Winn Dixie v. Teneyck, 656 So.2d 1348, 1351 (Fla. 1st DCA 1995) (holding evidence improperly excluded); Walters v. Keebler Co., 652 So.2d 976, 977 (Fla. 1st DCA 1995) (same); Landers v. Medical Personnel Pool of N. Cent. Fla., 647 So.2d 173, 174 (Fla. 1st DCA 1994) (holding failure to fill in blank was not a misrepresentation). The causation requirements under the statute are, moreover, essentially identical to those laid down in Martin Company.
II.
The record does not establish, to a reasonable degree of medical certainty, that Ms. Irving’s work-related injury had any causal connection to her muscle strain, much less to any prior disability. As far as the record reveals, Ms. Irving missed *1051 no work at all on account of the muscle strain.
The employer had the burden to establish that the work-related injury was causally connected to a prior disability or a specified condition for which the claimant had received compensation and that the claimant obtained employment by falsely misrepresenting the disability or condition. See Moore v. Williams Co., 622 So.2d 120, 121 (Fla. 1st DCA 1993) (“Section 440.16(5) contains several provisions pertaining to subsequent injuries, but chapter 90-201 amended paragraph (a) so as to address only circumstances involving the aggravation or acceleration of a preexisting condition and to preclude benefits where a specified misrepresentation has been made. Accordingly, we construe these changes to preclude benefits due to such misrepresentation only in connection with the aggravation or acceleration of a preexisting condition.”); Craig v. Gray’s Guard Serv., 582 So.2d 35, 36-37 (Fla. 1st DCA 1991).
Dr. Marc Newquist, the physician who treated Ms. Irving for right shoulder pain after she got off work on September 1, 1994, testified:
Just as ... baseball pitcher[s] may injure their shoulders or their pitching shoulder, that injury may heal completely. Most people would believe that some time later in their career they’re going to injure that exact same shoulder and possibly the exact same muscle. With that as a general reference, I believe that this patient’s muscular strain would have healed completely, however, it could easily be reexacerbated if she continued to do types of activity that caused her to overuse or improperly use body mechanics.
After examining Ms. Irving’s medical records, however, Dr. Newquist concluded that the present injury was separate and distinct from the injury he treated in 1994.
Dr. Stanley Zemankiewicz, the orthopedic surgeon who treated her for the present injury, diagnosed her with a “strained or stretched or torn right rotator cuff tendon,” also known as “frozen shoulder.”
He believed that the present injury was the initial injury to her shoulder. Dr. Paul Dell, another orthopedic surgeon, performed an independent medical examination on January 1, 1997. On cross examination, he was asked the following hypothetical question:
Q. Doctor, if we assume that Ms. Irving in presenting herself to Dr. [Newquist] had pains in her right shoulder at the time and, had sustained a muscle strain to her right shoulder at the time, is it not reasonable, Doctor, that that injury could be aggravated and continue on through into the date of accident [in November of 1995].
[[Image here]]
A. Yes, if the facts are that she had a previous problem with her right shoulder when she visited the emergency room then this could be a reexacerbation of those problems.
The hypothetical presented to Dr. Dell assumes the 1994 injury “continue[d]” until the industrial accident more than a year later. But the claimant did not seek medical care after the solitary visit on September 1, 1994, and nothing in the record established ongoing symptoms or problems from the previous injury. Without proof that the muscle strain lasted until November 18, 1995, Dr. Dell’s answer to the hypothetical question afforded no basis to infer that the injuries were causally related.
The employer and its insurer failed to meet the burden to show that the current injury was an “aggravation or acceleration of [a] preexisting condition.” Because the cause of Ms. Irving’s “frozen shoulder” was not readily observable, competent medical evidence was required to prove a causal link between the muscle strain and the injured rotator cuff tendon. See, e.g., Brasington Cadillac-Oldsmobile v. Martin, 641 So.2d 442, 445 (Fla. 1st DCA 1994); Arand Constr. Co. v. Dyer, 592 So.2d 276, 281 (Fla. 1st DCA 1991). But see Closet Maid v. Sykes, 25 Fla. L. Weekly D459, — So.2d -, 2000 WL 155878 *1052 (Fla. 1st DCA Feb. 15, 2000) (en banc). That these two injuries occurred in the same general location is not enough to support the inference that they are causally related. The medical evidence established only that Ms. Irving had a self-limiting muscle strain more than a year before she injured her rotator cuff tendon at work.
I would remand with directions that the judge of compensation claims decide the claim for future medical benefits on the merits.